CHARLES E. MAIN *vs.* COUNTY COMMISSIONERS OF PLYMOUTH.

Suffolk.   March 6, 7, 1912. — May 25, 1912.

Present: RUGG, C. J., BRALEY, SHELDON, & DECOURCY, JJ.

*Way,* Public: relocation, layout.   *County Commissioners.   Certiorari.*

A petition by residents of two adjoining counties to the county commissioners of one of the counties, representing that a certain "town road" in that county "as also" a certain "ancient way . . . is crooked, narrow and with limits undefined," and petitioning the board "to lay out a county highway over the route aforesaid, except that we petition that a new layout be established" at a certain point "as public necessity and common convenience would seem to require," contains as to the two ways described a single averment and a single prayer; and the county commissioners have no jurisdiction to divide the prayer of the petitioner, relocating under R. L. c. 48, § 12, the way described as the "town road" and laying out under § 1 the way described as an "ancient way."

Action to be taken by county commissioners under R. L. c 48, § 1, which provides for the laying out of a new highway from town to town or from place to place within the same town, or for the alteration or discontinuance of an existing highway, is fundamentally different from that to be taken under § 12 of that chapter, which provides for the relocation of a way within a town.

A petition to a board of county commissioners contained a single prayer asking them "to lay out a county highway over the route" of a town way and of a way called an "ancient way." The board in dealing with the petition acted outside of their jurisdiction in laying out a highway under R. L. c. 48, § 1, over the course of the alleged "ancient way" and relocating the town way under § 12 of the statute. The whole course of their proceedings with regard to the petition indicated that they regarded the two ways as designed to be used together and to serve one main purpose in common. It did not appear that the commissioners would have dealt as they did with either way if they had recognized their lack of power to act under § 1 as to one way and under § 12 as to the other. The owner of land through which the alleged "ancient way" passed petitioned for a writ of certiorari quashing the proceedings. In granting the writ, it was *held* that the entire proceedings of the commissioners should be quashed because their error went to the root of their action.

PETITION, filed in the Supreme Judicial Court on May 9, 1911, and afterwards amended, for a writ of certiorari to quash the action of the respondents in regard to the following petition:

"Respectfully represent the undersigned residents of Plymouth and Bristol Counties that the town road leading from a point on the State Road near the Keyes Memorial Chapel in South Wareham via Fearing's Hill and Blackmore Pond to its junction with the

Plymouth to Sippecan county road near the residence of Jerome Dean, as also the ancient way, from a point near the dwelling of Nathaniel White to Barlow's Landing on the Weweantit river, is crooked, narrow and with limits undefined: we therefore petition your Honorable Board to lay out a county highway over the route aforesaid, except that we petition that a new layout be established at the Ox Bow Bend near the farmhouse of Dr. Maurice H. Richardson as public necessity and common convenience would seem to require, and mark by stone bounds the limits of Barlow's Landing."

The petitioner owned land through which the alleged "ancient way" passed. The proceedings of the respondents in regard to the petition are described in the opinion.

The case was reserved by *Morton,* J., upon the petition, the answer and a sketch agreed upon by the parties, for determination by the full court.

*E. V. Grabill,* for the petitioner.

*H. W. Brown,* (*C. S. Davis* with him,) for the respondents.

SHELDON, J. As the county commissioners do not appear to have granted the prayers of the petition "that a new layout be established at the Ox Bow Bend near the farmhouse of Dr. Maurice H. Richardson," and to "mark by stone bounds the limits of Barlow's Landing," we need not consider the nature or effect of either of these prayers. The rest of the petition represented that two ways therein mentioned, one called a town way and the other an ancient way, were crooked and narrow and had undefined limits; and asked the commissioners "to lay out a county highway over the route aforesaid." In effect the petition recited the existence of two public ways, and prayed that a county highway be laid out over the route of these two ways. The county commissioners made a decree which, after a somewhat incorrect recital of the petition, adjudged that common convenience and necessity required that the prayer of the petition be granted. At the hearing which followed this adjudication the commissioners ruled that the petition called for action under § 12 and not under § 1 of R. L. c. 48, that is, that it asked for the relocation of two existing ways and not for the laying out of a new way or for the alteration or discontinuance of any existing ways. Evidence was thereupon introduced which tended to show, and upon which the commissioners

apparently were convinced, that the "ancient way" described in the petition as running to Barlow's Landing, had no existence as a public way and so could not be relocated by the commissioners under § 12 already referred to. The hearing then was closed and the matter of the petition was taken under advisement. About two months later, on December 24, 1910, the commissioners, after notice to the counsel who had appeared before them, held another meeting, and there stated that they had determined that the portion of the petition concerning the "ancient way" should be dealt with as a petition under § 1 for the laying out of a new way. Other proceedings took place which need not be stated. They made a decree on April 18, 1911, by which they first widened and straightened the town way named in the petition and in fact relocated it, proceeding under the authority of R. L. c. 48, § 12, and then proceeded to lay out a new highway to Barlow's Landing, substantially, as we understand, over the course of the alleged ancient way.

It will be seen that the commissioners undertook to divide the single prayer of the petition into two parts, a prayer for the relocation or alteration of the existing town way, and a prayer for the laying out of a new way over the general course of the alleged ancient way, which apparently was not a public way at all and certainly had not been found to be such. In this they exceeded their authority.

We do not deem it necessary to determine whether the petition should have been treated as brought under § 1 or § 12 of the statute already referred to. The commissioners ruled, apparently without objection from any one, that it was brought under the latter section, and the hearing proceeded and evidence was put in under that ruling. No doubt there are difficulties that would have to be considered if the correctness of this ruling had been contested before us. The petition was inartificially drawn, and its scope and effect presented a fair question for discussion. See *Stockwell* v. *Fitchburg*, 110 Mass. 305, 309; *Livermore* v. *County of Norfolk*, 186 Mass. 133, and 189 Mass. 326; *Bennett* v. *Wellesley*, 189 Mass. 308; *Holbrook* v. *Douglas*, 200 Mass. 94. But as to the two alleged ways mentioned therein, upon which the county commissioners were asked to act, the averment was single, that each was "crooked, narrow and with limits undefined," and the prayer was a single one, for the laying out of a county highway over the route thereof.

It did not ask for different action as to the different ways. This court early decided that an application for the alteration of an existing way did not authorize the laying out of a wholly new way. *Commonwealth* v. *Cambridge,* 7 Mass. 158. For whatever action this petition may be regarded as asking, it follows that two different and inconsistent courses could not be grounded upon the one prayer made therein.

It is settled that the action to be taken under these two respective sections is fundamentally different. This is recognized in both the opinions in *Bennett* v. *Wellesley,* 189 Mass. 308, though perhaps most clearly stated in the dissenting opinion of Knowlton, C. J., in language which as to this point was not the subject of disagreement: "If a petition plainly calls for an alteration, within the meaning of § 1, the commissioners have no jurisdiction to act upon it under § 12; and if it plainly calls for a relocation, within the meaning of § 12, they have no jurisdiction to proceed under § 1." But here the commissioners have undertaken to do even more than what was thus said to be beyond their power. They have not merely treated a petition brought under one section (no matter which one) as brought under the other, but have treated a single averment and a single prayer as made partly under one and partly under the other section. And see *Tufts* v. *Somerville,* 122 Mass. 273, as quoted and commented on in *Watertown* v. *County Commissioners,* 176 Mass. 22, 27.

It has been very ingeniously argued by the counsel for the respondents that as we have decided that action upon more than one way can be asked for in a single petition (*Yeamans* v. *County Commissioners,* 16 Gray, 36), it well may be that one sort of action may be asked for as to one way and a different action as to another way; *Goodwin* v. *Marblehead,* 1 Allen, 37; *Pembroke* v. *County Commissioners,* 12 Cush. 351; and it is suggested that it would be only a short step further to hold that the same form of allegation and prayer may justify different kinds of action as to different ways. But we are clearly of opinion that upon a specific prayer for one and the same action to be taken upon different ways, where the prayer gives jurisdiction for the adoption of only one course, two different and inconsistent courses of action cannot be taken as to two different ways, which are both the subject of that one prayer.

The error of the commissioners goes to the root of their action. It does not appear that they would have dealt as they have with either of these subject matters if they had recognized their lack of power to do both of the different things which they attempted to do. The whole course of the proceedings indicates that they regarded the two ways which they sought to define and to establish as designed to be used together and to serve one main purpose in common. Indeed there has been hardly a suggestion to the contrary. In our opinion the proceedings must be quashed. The other objections which have been taken to the proceedings need not be considered.

*Certiorari to issue.*