ALICE EVELYN HARVEY *vs.* INHABITANTS OF SANDWICH.

Barnstable.   March 18, 1926. — June 9, 1926.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Deed*, Construction.   *Prescription.   Land Court*, Parties.

The rule, that the burden rests upon one, petitioning in the Land Court for the registration of the title to land, of proving that he is entitled to such registration, does not go so far as to confer upon a stranger the right to

put a petitioner for registration upon proof of a title, where the real owner may concede title to be in the petitioner and, for reasons sufficient to him, acquiesce in its establishment in the petitioner by a decision of the Land Court, thus making it good against all the world. Per PIERCE, J.

A deed, granting "the grist mill, dam and stream, with all the privileges and appurtenances thereunto belonging, situated in Sandwich," conveyed by implication the land under the structures and the land adjacent thereto so far as necessary to its use and commonly used with it, not as an appurtenance, but as a parcel.

Deeds containing the description above stated and dated in 1831 and 1841 are to be construed in the light of the use then of the grist mill and the adjacent land owned by the grantor, and the effect of those grants cannot be cut down by any vagueness of terms or words used by grantors in subsequent conveyances preceding a deed to one who petitioned for registration of his title in the Land Court.

Upon findings set out in a decision by a judge in the Land Court who heard a petition for the registration of the title to the land conveyed by the deeds above described, it was *held*, that a conclusion by him, that there had not been acquired by prescription any right of way over the locus in favor of the public, was warranted.

PETITION, filed in the Land Court on May 26, 1924, for registration of the title to a parcel of land at Sandwich.

The petition was heard in the Land Court by *Corbett*, J. Material facts found by him are stated in the opinion. The respondent asked for the following rulings:

"10. The description in the petitioner's deed and those of her predecessors in title includes only the land under the original grist mill building, and such easements of passage and access, rights to erect and maintain a dam and raise and discharge water as are reasonably necessary for the use and proper operation of the mill."

"12. There has been no such exclusive possession in the petitioner to the land in front of the mill building and on top of the dam as to give to her a title to the same by adverse possession.

"13. Upon all the evidence the petitioner has not acquired a title to the land between the mill and the pond by adverse possession.

"14. The description contained in the petitioner's deed and those of her predecessors in title does not include the fee in the land under the paths in question.

"15. Upon all the evidence the petitioner has not obtained

title to the land under the paths in question by prescription or adverse possession."

"17. Upon all the evidence the petitioner has established a title by adverse possession at the most only to land under the tag shop, so called, and the land in the rear of the buildings between the abandoned road, so called, the water, and the pathway leading from the front of the mill property down over the East Bridge to the corner of Main and Water Streets."

"27. The persistent, continuous, open use of the paths in question by the public over a period of time to which the memory of man runneth not to the contrary gives the public a right by prescription over them."

"28. Upon all the evidence the public acquired rights of way for foot passage by prescription by twenty years continuous, open, adverse user prior to 1855 and prior to the erection of any other buildings on the premises except the original grist mill building."

"30. Upon all the evidence the petitioner has not established her title in fee to the land between the original grist mill and the lake, either by her record title or by adverse possession."

The judge refused the rulings and made the decision described in the opinion. The respondent alleged exceptions.

*F. W. Fisher,* (*F. K. Linscott & W. H. Wood* with him,) for the respondent.

*T. F. O'Brien,* for the petitioner.

PIERCE, J. This is a petition for the registration of certain land in Sandwich bounded southerly by the Mill Pond, westerly by Grove Street, northwesterly by land of the town of Sandwich, northeasterly by the State highway and easterly by another road. The petitioner claims no fee in said streets, and does not desire to have adjudicated in these proceedings her claim that certain rights of flowage are appurtenant to this land. The town filed two answers, one for the inhabitants of the town and the other for the school committee. The school committee contends that certain ways extend across the locus from Grove Street to the State highway and to Water Street, that the same have been used

by teachers and pupils going to the high school, located on a street off Grove Street, for more than twenty years, and that rights of way have been acquired in these ways as appurtenant to the school land. The inhabitants of the town contend that these so called ways running across the locus are public ways and that the fee is now in the town; but, if this is not true, then, that rights have been acquired by the public in these ways by use for more than twenty years; that the boundaries of the locus encroach on Grove Street, on Water Street, and on town property; and further contend that, if the petitioner has any right at all in the locus, such right is only to maintain a grist mill upon said premises and the right pertaining thereto to take water for power from the said Mill Pond, and that such right must be adjudicated as a dependent right in connection with the registration of the title to the mill property; that the only title the petitioner has is a grant to maintain a mill for grinding grist for the inhabitants of the town of Sandwich; and that, having discontinued the grinding of grist and converted the mill into a tea house and restaurant, she has waived all claim to any interest therein and the fee in all property claimed by the petitioner reverts to said town.

The trial judge ruled that the petitioner was entitled to register all of the land between the spillway, or stream, and the old road and Grove Street, the south boundary being the Mill Pond, and also a strip of land running from the side lines of the two bridges over the spillway extended to the highway, and also the small strip of land on the easterly side of the spillway between the two bridges, where the fish weir was located. He further ruled that the inhabitants of the town of Sandwich had acquired no rights of way across the locus. He refused to give the respondent town's requests for rulings numbered 10, 12, 13, 14, 15, 17, 27, 28 and 30. The case is before this court on the exceptions of the inhabitants of the town of Sandwich to the refusal of the judge to give rulings and findings requested, and to his rulings, findings and decision contrary thereto.

A reduced copy of the plan of the land sought to be registered, filed with the petition, is annexed to the bill of excep-

tions.  This plan shows a small parcel of land, roughly
triangular in shape, bounded by a pond on the south, north-
westerly by public highways, Grove Street and a discontinued
road called Pocasset Road, which ran between land claimed
by the petitioner and land of the respondent town, and
northeasterly by the State highway and another public
way, called Water Street.  The facts and inferences of fact
found by the trial judge are set out at great length in the
decision filed in the Land Court, and in the bill of exceptions.
In view of the finding that there is no evidence that the town
ever held title to the land claimed by the petitioner, it is
difficult to understand by what right the town is allowed to
contest the legal title, which the petitioner asserts is held by
her in fee, in any other way than by establishing in the title
claimed in fee by the petitioner its right to an easement of foot
passage over certain paths.  See *McQuesten* v. *Attorney Gen-
eral,* 187 Mass. 185; *First National Bank of Woburn* v. *Woburn,*
192 Mass. 220; *First Parish in Shrewsbury* v. *Smith,* 14 Pick.
297; *Weeks* v. *Brooks,* 205 Mass. 458, 462.  The burden
rests upon the petitioner of proving that she is entitled to
registration of her title, *Hughes* v. *Williams,* 229 Mass. 467;
but that rule does not go so far as to confer upon a stranger
the right to put a petitioner for registration upon proof of a
title, which the real owner may concede to the petitioner and,
for reasons sufficient to him, acquiesce in its establishment
in the petitioner by a decision of the Land Court, which
shall make it good against all the world.  *First Parish in
Shrewsbury* v. *Smith, supra.*  However this may be, the trial
judge was right in his inferences of fact and in his rulings.

Due perhaps to the fact that the registry of deeds of
Barnstable County was destroyed by fire in 1827, there are
no records of deeds prior to 1827 through which the owner-
ship of the locus can be traced until that date, and otherwise
there is no evidence reported to show the owners of the locus
prior to the deeds abstracted by the examiner; nor is there
evidence reported to show who were the owners of adjoining
or adjacent land at that time.  More particularly, there is
no evidence that the inhabitants of the town of Sandwich
ever held title to the land sought to be registered by the

petitioner, nor that the locus was conveyed to the petitioner or to her predecessors in title subject to any condition or limitation whatsoever.

Apparently it is assumed by all in interest, and we view the facts reported on that footing, that one Elisha Pope owned the premises sought to be registered on April 8, 1831, when he conveyed to Samuel, Paul and Ebenezer Wing "One undivided half of the grist mill, dam and stream, with all the privileges and appurtenances thereunto belonging, situated in Sandwich, being formerly owned by Elisha and Lemuel Pope deceased," as also on October 20, 1841, when he conveyed to Abner Ellis "all my right, title and interest in and to the grist mill and stream and mill privilege in the center village of Sandwich and being one moiety or half part of the same, and is in common and undivided with Samuel Wing and brothers." Through mesne conveyances the petitioner acquired title to the premises thus conveyed. The town contends that these grants conveyed only the land under the grist mill building and such easements of passage and access thereto, and rights to erect and maintain a dam and raise and discharge water as are reasonably necessary for the use and operation of the mill, and that nothing else passed by the deeds under which the petitioner claims title. The petitioner contends that she acquired through the conveyances a title in fee simple, not only to the land under the mill with the dam and streams of water, but also to land adjacent to the mill so far as such land was necessary to its use or was commonly used with it.

It is a general rule of construction that "whenever land is occupied and improved by buildings or other structures designed for a particular purpose, which comprehends its practical beneficial use and enjoyment, it is aptly designated and conveyed by a term which describes the purpose to which it is thus appropriated." The grant of a "house," "barn," or "mill," or "cottage," or "wharf," is a familiar instance of the use of such terms, and the conveyance in such a form passes by implication and comprehends the land under the structure and the land adjacent thereto so far as necessary to its use and commonly used with it not as an appurte-

nance but as parcel. *Johnson* v. *Rayner*, 6 Gray, 107, 110. *Forbush* v. *Lombard*, 13 Met. 109. *Wooley* v. *Groton*, 2 Cush. 305. *Greenwood* v. *Murdock*, 9 Gray, 20. *Ammidown* v. *Ball*, 8 Allen, 293. *Owen* v. *Field*, 102 Mass. 90, 102. *Scanlan* v. *Geddes*, 112 Mass. 15. *Wishart* v. *McKnight*, 184 Mass. 283, 286. The grants in 1831 and in 1841 in terms conveyed the mill, the dam and stream. The dam and stream were necessary incidents to the enjoyment of the mill. The small parcel of land between the raceway and spillway was found by the judge to have been used in connection with the mill for mill purposes, and to have passed at least as appurtenant thereto. *Ammidown* v. *Ball, supra.*

The contention of the town that as matter of law the material facts do not justify the finding and rulings by the trial judge cannot be supported. The deeds are to be construed as they were written in 1831 and in 1841, in the light of the then use of the grist mill and the adjacent land owned by the grantor, and the effect of these grants cannot be cut down by any vagueness of terms or words used by grantors in subsequent conveyances until the deed to the petitioner.

The finding and ruling by the judge that the public has not acquired a right of way over the two paths which cross the locus from Grove Street to the State highway and Water Street is supported by the facts found and must stand. To establish a public way by prescription it was necessary for the town to prove an adverse use of the land sought to be registered, which had continued for more than twenty years under a claim of rights and with the acquiescence of the petitioner or of her predecessors in title to such use. *Sprow* v. *Boston & Albany Railroad*, 163 Mass. 330, 339. *Bullukian* v. *Franklin*, 248 Mass. 151, 155. There are no facts reported from which it can be found or inferred that the town ever made any repairs upon either of these paths. *McCreary* v. *Boston & Maine Railroad*, 153 Mass. 300. *Sullivan* v. *Worcester*, 232 Mass. 111. *Reed* v. *Mayo*, 220 Mass. 565. *Commonwealth* v. *Holliston*, 107 Mass. 232. *Commonwealth* v. *Matthews*, 122 Mass. 60. *Barron* v. *Watertown*, 211 Mass. 46. On the contrary, the finding of the judge that the public use was not adverse is supported by his in-

ferential finding, that "The grist mill, from the very nature of the business, brought to the property during a long period of time a large number of the inhabitants of the town. They probably visited the mill by any paths convenient for them. Since the operation of the tag shop its employees and customers used the paths in question and only teams going to and from the shop used the team bridge. It is obvious that ways or paths were necessary to the conduct of the business carried on there. It is reasonable to believe that those who had no business to transact would not be prevented from passing over them and such use would not be adverse. *Durgin* v. *Lowell,* 3 Allen, 398, 400. *Moffatt* v. *Kenny,* 174 Mass. 311"; and by his summary of the testimony of witnesses, which follows: "One or more of the witnesses testified that the way was used as a short cut. Many of the residents of Grove Street, instead of going up that street, which runs by the town hall to the State highway, when going to that part of the town east or northeast of locus, crossed over one path or the other, thus shortening the distance by about two hundred feet, and so in returning to Grove Street. The paths probably were used by the school children for the same reason. It is significant that the town did not keep the paths in repair. More so when it did not object to the positive public declaration of the owners in posting the sign on the tag shop some forty-six years ago, which read 'This is not a public way.' Another significant fact is that the surveyor of highways asked permission to put the iron guard rail over the flume bridge. Moreover, Mrs. Holway testified that the use of the paths was interrupted by closing them to travellers on three different occasions and that her grandmother when she was the owner of the premises told her uncle to close them and warned and cautioned him about the possibility of persons acquiring rights of way, and after she told him to bar or close them, she asked him if he had done so and seemed anxious about it."

There are no facts reported to support the contention of the town that the paths were ancient paths, "old foot paths" in existence in 1627, when a law was passed by the General Court on January 3, 1627, whereby all old foot paths are to

be continued to be allowed "except other provisions be orderly made." There is no evidence reported concerning the use of the locus before 1831 and the judge finds in effect that there is a suggestion, but no evidence, that the mill was erected in 1640; and no evidence when it was erected other than an assumption that it was built at an indefinite time before 1831.

*Exceptions overruled.*