CHARLES F. FENN & another vs. TOWN OF
MIDDLEBOROUGH.

Plymouth.    March 20, 1978. — February 26, 1979.

Present: KEVILLE, ARMSTRONG, & BROWN, JJ.

*Way*, Public: establishment.

In a proceeding in the Land Court, evidence that the surfaces of two
  roads were hard dirt or gravel, that the roads were at least two car
  lengths wide, that there were street signs at certain intersections
  of the roads, that one road connected to accepted public ways at
  both ends and the other at one end, that three maps dated 1855,
  1879, and 1903 showed that both roads were existing ways at those
  times, and that some traffic, the nature and volume of which was
  not disclosed, had been observed on the roads over the past sixteen
  years was insufficient to warrant a finding that the roads were
  public ways. [81-87]

PETITION filed in the Land Court on April 24, 1975.
The case was heard by *Sullivan*, J.
*William C. Decas* for the defendant.
*Joseph F. Linehan* for the plaintiffs.

ARMSTRONG, J. The plaintiffs, husband and wife,
brought this action to confirm their title to a twenty-one
acre parcel of vacant land in Middleborough. Their peti-
tion alleged, in part, that the parcel lay at the junction
of, and was bounded on two sides by, public ways known
as Short Street and Tispaquin Street. The town had to be
given notice of the proceeding, both as owner of one of the
abutting parcels and because the petition sought determi-
nation of the boundaries of the ways mentioned. See
G. L. c. 185, §§ 29 and 39. Of those given notice, the town
alone filed an appearance. By its answer it conceded the
correctness of the boundaries set forth in the Fenns' peti-
tion but denied that Short Street and Tispaquin Street

were public ways, at least where they bounded the Fenns' land. The case went to trial on that issue only.[1]

The evidence took three forms. The first was testimony by the plaintiff Charles F. Fenn to the effect that he had purchased the property sixteen years earlier and had driven past it only occasionally since that time. He testified that the surfaces of the roads at his property, and over most of their respective lengths, are hard dirt or gravel, that they are at least two-car widths wide, that there are street signs at certain intersections of the roads, and that Tispaquin Street connects to accepted public ways at both ends, as does the far end of Short Street. He testified to having seen "traffic" on the two streets, the nature and volume of which were not disclosed. He disclaimed any knowledge concerning use of the streets prior to his purchase. The second form of evidence was copies of three maps of Middleborough, kept in the Plymouth County registry of deeds, dated 1855, 1879, and 1903, which showed that Tispaquin and Short streets were existing ways at those times; the maps were not offered for the purpose of proving (and they did not in fact indicate) the legal status of either street as a public or private way.[2] The third form of evidence was a view taken by the judge, which was evidently the source of her findings concerning the present condition of the ways and the properties abutting them.

---

[1] No question was raised below or is raised here whether that determination was necessary for disposition of the plaintiffs' petition or whether an adjudication of the legal status of the ways, as contrasted with their boundaries, fell beyond the scope of the petition.

[2] The plaintiffs also introduced in evidence, over the town's objection, a highway map of Plymouth County, dated 1974, purporting to have been published by the county, which represented that the entire length of Tispaquin Street was "county highway" and the entire length of Short Street was "constructed town way." The map was inadmissible for the reasons stated in *Amee* v. *Boston & A.R.R.,* 212 Mass. 421, 425 (1912), and we review the evidence without reference to it. The record gives no indication that the judge relied on the 1974 map in reaching her decision.

The evidence showed that Tispaquin Street runs from Wareham Street (Rte. 28) northerly past the intersection of Thomas Street, the intersection of Chestnut Street, the junction of Short Street, and the intersection of Rocky Meadow Road, to Plymouth Street (old Route 44), a distance of approximately three and a half miles. Short Street runs from Tispaquin Street northwesterly to Plymouth Street, a distance of approximately one mile. The plaintiffs' land lies at the junction, bounded northeasterly by Short Street and easterly by Tispaquin Street. The judge found that the only layout of either street by a public body was of the southerly end of Tispaquin Street, from Wareham Street to (apparently) Thomas Street; that there are red town of Middleborough street signs for Tispaquin Street at its junction with Wareham Road and for Short Street at its junction with Tispaquin Street at the locus; that there is an older white town street sign for Tispaquin Street at its junction with Plymouth Street; that there are official stop signs at the points where Tispaquin Street crosses Thomas Street and Chestnut Street; that the portions of Tispaquin and Short streets adjacent to the locus do not have macadam or paved surfaces but do have hard gravel surfaces; that Tispaquin Street is at least as wide in the area adjacent to the Fenns' land as in the section where it has been laid out; that there are stone walls paralleling Tispaquin Street for most of its length where there are no homes; that on the easterly side of Tispaquin Street, approximately 600 feet south of its junction with Short Street, there is an attractive home in the location where a home is shown on the 1855, 1879 and 1903 maps; that there are areas of paving in the road by the house; that on the right hand side of the road as a motorist approaches the house in either direction there is a warning sign with the message, "Slow Children," a sign typical of those used in several municipalities but without a legend as to its source; that there are several new homes which have been constructed on Tispaquin Street north of Short Street; that there

are also several homes on Short Street at the end close to Plymouth Street; that Short Street is paved in that portion; and that there are no other homes near the locus on either Short Street or Tispaquin Street.

On these findings the judge drew the conclusion that the streets in question were public ways. After discussing the distinction between the creation of public ways by dedication, abolished by St. 1846, c. 203, § 1 (see now G. L. c. 84, § 23; see also *Uliasz* v. *Gillette,* 357 Mass. 96, 103-104 [1970]), and the creation of public ways by prescription, which was held to be unaffected by that statute in *Jennings* v. *Tisbury,* 5 Gray 73 (1855), and *Commonwealth* v. *Coupe,* 128 Mass. 63 (1880), the judge ruled that "[t]he type of ancient way with which we are concerned seems to fit admirably the concept that the two ways had been laid out by the proper authorities of which no record exists. The evidence establishes that for at least 121 years there have been streets in their present locations, one of which connects two important thoroughfares. The area in question is still only sparsely settled, and the surface of the roads is atypical of a public way in Massachusetts. All other indicia, however, lead to the conclusion that both Tispaquin Street and Short Street where they adjoin the premises sought to be registered are public ways." The judge cited as authority for her ruling the cases of *Commonwealth* v. *Coupe, supra; Longley* v. *Worcester,* 304 Mass. 580, 586 (1939); and *Carson* v. *Brady,* 329 Mass. 36, 40-41 (1952). From the portion of the decree showing Tispaquin Street and Short Street to be public ways, the town took this appeal.

In general, it may be said that an existing way in a city or town in this Commonwealth is not a "public" way — that is, one which a city or town has a duty to maintain free from defects (see G. L. c. 84, §§ 1, 15, 22; *First National Bank* v. *Woburn,* 192 Mass. 220, 222-223 [1906]) — unless it has become public in character in one of three ways: (1) a laying out by public authority in the manner prescribed by statute (see G. L. c. 82, §§ 1-32); (2) prescrip-

tion; and (3) prior to 1846, a dedication by the owner to public use, permanent and unequivocal (see *Longley* v. *Worcester*, 304 Mass. at 587-589; *Uliasz* v. *Gillette*, 357 Mass. at 104), coupled with an express or implied acceptance by the public. Because the 1846 statute put an end to the creation thereafter of public ways by dedication and acceptance (*Loriol* v. *Keene*, 343 Mass. 358, 361 [1961]), it has only been possible since that time to create a public way by a laying out in the statutory manner or by prescription.

There was no evidence that Short Street or the portion of Tispaquin Street in the vicinity of the Fenns' land had been laid out by public authority, and there was no evidence that those ways had been dedicated to public use and accepted as such, or even that they existed, prior to 1846. Nor was there any evidence of use by the public for the twenty-year prescriptive period, the only evidence bearing directly on use of the ways having been the testimony of Charles Fenn, whose knowledge encompassed a shorter period.

It is well settled that the creation of a public way by adverse use depends on a showing of "actual public use, general, uninterrupted, continued for [the prescriptive period]." *Jennings* v. *Tisbury*, 5 Gray at 74. *Commonwealth* v. *Coupe*, 128 Mass. at 65. *White* v. *Boston Gear Works, Inc.*, 315 Mass. 496, 499 (1944). It is sometimes said that to establish such adverse use "the further fact must be proved, or admitted, that the general public used the way as a public right; and that it did must be proved by facts which distinguish the use relied on from a rightful use by those who have permissive right to travel over the private way." *Bullukian* v. *Franklin*, 248 Mass. 151, 155 (1924). *Boxborough* v. *Joatham Spring Realty Trust*, 356 Mass. 487, 490 (1969). To the same effect, see *Harvey* v. *Sandwich*, 256 Mass. 379, 385 (1926); *Gower* v. *Saugus*, 315 Mass. 677, 681 (1944). Other cases indicate that the necessary adversity and lack of permissiveness may be inferred by the finder of fact from the uninterrupted use

by the public, unexplained, for the prescriptive period. See *Bassett* v. *Harwich*, 180 Mass. 585, 586, 587 (1902); *Truc* v. *Field*, 269 Mass. 524, 528-529 (1930). Whatever may be the rule as to the necessity of independent evidence of adversity, it seems to us that the proof in this case fell short of showing use by the public continuous for the requisite period.

We have considered the question whether, in the absence of direct evidence to that effect, use by the public for the requisite period might not properly be found by inference from the age of the ways, the fact that they connect to public ways, and the presence of street signs and traffic signs, those being the factors which seem to have influenced the judge in drawing the conclusion that the ways became public by prescription. We do not find support for such a view in the authorities. Age by itself is a neutral factor, there being ancient private, as well as ancient public, ways; and the connection of the ways here in question to public ways does not serve to distinguish them from numerous ways which have been found to be private rather than public in nature.[3] The several municipal signs located at various points on Tispaquin and Short streets suggest public use only remotely, and there is no

---

[3] We have not found a case in which a way has been claimed to be public which did not connect at one end, like Short Street, with a public way; and cases are not infrequent in which the evidence has been held insufficient to warrant a finding that an old way connecting (like Tispaquin Street) at both ends with public ways had become public by prescription. See, e.g., *Sprow* v. *Boston & A.R.R.*, 163 Mass. 330 (1895), and *Moffatt* v. *Kenny*, 174 Mass. 311 (1899). See also *Harvey* v. *Sandwich*, 256 Mass. at 385-386 (1926) (in which the finder of fact disbelieved that the public's use of such ways had been adverse), and *Gower* v. *Saugus, supra* (in which one end of the way in question connected to a main highway and the other to a development some street or streets of which inferentially connected to other public ways). Each of those cases is distinguishable from the present case because there was evidence showing that the public use was permissive, at least at the outset, and the cases appear to be decided on the basis that the finder of fact was required to accept that evidence. Each involved direct evidence of actual public use, however, evidence which was not offered in the case before us.

indication in the evidence how long they have been there; in any event, far more significant indicia of municipal improvements were held insufficient in *Teague* v. *Boston,* 278 Mass. 305 (1932). The presence of such signs, if not offset by signs warning the public that the ways are private, might have relevance to the statutory liability of the city under G. L. c. 84, § 24, for defects in unposted private ways dedicated to public use; but in our opinion such signs cannot be regarded as evidence sufficient to show that a way has become public by prescription. A contrary view would have the practical effect of permitting municipal officials to establish public ways by acts other than those specified in the statutes governing the laying out of public ways, a result not in accord with public policy. See *Pembroke* v. *County Commrs. of Plymouth,* 12 Cush. 351 (1853); *Main* v. *County Commrs. of Plymouth,* 212 Mass. 182 (1912); *Loriol* v. *Keene,* 343 Mass. at 361-363. We also observe that in the cases primarily relied upon as authorities by the judge (*Commonwealth* v. *Coupe, supra*; and *Carson* v. *Brady, supra*), the finding of the court that a way had become public by prescription was supported by direct evidence of actual use by the general public continuous and uninterrupted for a period of twenty years or more.

We have also considered whether the judge's decision can be sustained on an alternate ground, not involving the concept of adverse use for the prescriptive period: namely, on the basis of a factual inference from the evidence taken as a whole that the ways in question were laid out at some anterior time and that the record thereof has been lost. It was customary in the early cases having to do with ways made public by prescription to recite "that public easements . . . may be shown by long and uninterrupted use and enjoyment, upon the conclusive legal presumption from such enjoyment, that they were, at some anterior period, laid out and established by competent authority." *Reed* v. *Northfield,* 13 Pick. 94, 98 (1832). Other cases seem to treat the presumption as one

of fact rather than law. See *Durgin* v. *Lowell*, 3 Allen 398, 401 (1862). But it was held in *Edson* v. *Munsell*, 10 Allen 557, 568 (1865), that in order to support the presumption, "the . . . use must have all the qualities of a prescription; it must be open, adverse, uninterrupted, and with the acquiescence of the owner." We have found no case in which the presumption of a layout has been raised on proof falling short of that required to find prescription.

We do not mean to preclude the possibility of showing that a way is public, as, for example, by means of ancient maps or other records, without showing the means by which the way came to be public. Consider, e.g., *W.D. Cowls, Inc.* v. *Woicekoski, ante* 18, 19-20 (1979), in which such evidence was offered, but the finder of fact declined to credit it. Although we have not found a case in this Commonwealth in which a way has been held public solely on the basis of such evidence, unsupported by evidence from which the way could be found public by adverse use continuous and uninterrupted for the requisite period, we know of no principle which would bar the proving of a public way on such evidence. But the finding in this case cannot be supported on such a theory, as the ancient maps are equally consistent with the ways' having been private during the one hundred twenty-one years of their proven existence.

The decree of the Land Court is to be modified so as to reflect that it has not been proven that Tispaquin Street and Short Street are public ways where they abut the Fenns' land. As so modified, the decree is affirmed.

*So ordered.*