ALBERT O. SCHULZE & others vs. TOWN OF HUNTINGTON
& others.

Hampshire. November 17, 1986. — July 1, 1987.

Present: ARMSTRONG, PERRETTA, & SMITH, JJ.

Way, Public: subdivision control, establishment, discontinuance.

In an action by the owners of an apparently landlocked parcel of undeveloped
    woodland seeking a building permit on the theory that an overgrown
    trail abutting the property's westerly boundary had been a continuation
    of an "old highway" mentioned in certain Nineteenth-Century deeds,
    and thus, a public way providing them with the frontage necessary for
    approval of their permit, evidence that the trail abutting the plaintiffs'
    land averaged less than one-half the width of town ways constructed in
    the last century, that it was marked with steep grades and outcroppings
    of ledge, that it was "wet" even during a time of near zero temperatures,
    and that nothing in the deed references carried the "old highway" south
    to the plaintiffs' property would not have warranted a finding that the
    trail was a public way. [418-420]

CIVIL ACTION commenced in the Superior Court Department
on March 26, 1982.

The case was heard by Raymond R. Cross, J.

The case was submitted on briefs.

Robert W. Kidd for the plaintiffs.

John H. Fitz-Gibbon for the defendants.

ARMSTRONG, J. The Schulzes own a seemingly landlocked,
106 acre parcel of undeveloped, hilly woodland in Huntington
bordered on the south and east, respectively, by the Montgom-
ery and Southampton town lines and on the north by Huntington
State Forest. Running along the westerly boundary, approxi-
mately 750 feet in length, is an overgrown trail averaging about
twelve feet in width, having some steep grades and some ledge
outcroppings, impassable by car but passable on foot. Ancient
stone walls in places on either side suggest use was as a public

way in the past. A plan prepared in the 1970's depicts the trail as "Jourdan Road", suggesting that it is an extension of a public way of the same name in Montgomery — a public way that, according to the judge's findings (and as shown on atlases from the turn of the century), stops short of the Montgomery - Huntington town line.

The Schulzes purchased their parcel in 1979. In 1981 they proposed to divide the parcel into two lots, each having in excess of two hundred feet of frontage (as required by the zoning by-law) on "Jourdan Road." They applied to the planning board for an endorsement that approval under the Subdivision Control Law was not required (G. L. c. 41, § 81P); but the planning board, presumably taking the view that "Jourdan Road," so called, was not a public way, denied the endorsement. The following year the Schulzes sought a building permit for a house on the undivided parcel, but the building inspector denied the permit by returning their application and fee. The Schulzes then appealed to the zoning board of appeals, seeking the building permit either on the theory that "Jourdan Road" was a public way or on the basis of a variance. In a decision that went in detail into unsuccessful attempts to document the history of the path, the zoning board denied relief, and the Schulzes appealed, naming as defendants both the members of the zoning board and the town in an effort to resolve the uncertainty concerning the status of "Jourdan Road."

The Schulzes conceded, properly, that they were not entitled to relief unless "Jourdan Road", where it abutted their parcel, was a public way. This was a question of fact, *W.D. Cowls, Inc.* v. *Woicekoski,* 7 Mass. App. Ct. 18, 19 (1979), and the burden of proof lay with the plaintiffs. *Witteveld* v. *Haverhill,* 12 Mass. App. Ct. 876, 877 (1981). See *Commonwealth* v. *Hayden,* 354 Mass. 727, 728 (1968).

To meet this burden the Schulzes adduced the minutes of a Huntington town meeting in 1852, at which the town voted "to discontinue the road from G. Wolcott's west line to Montgomery line so far as a highway is concerned, and make a bridle road of it." Through the testimony of a conveyancer, who testified from language in deeds, the Schulzes attempted

to show that the road spoken of in the 1852 vote was the same as the "Jourdan Road" that abutted their land to the west and also the same as a road referred to in some early deeds as "the old highway." From the discontinuance vote, the Schulzes invited the inference that the road was, prior to the attempted discontinuance, a public way. Relying on *Flagg* v. *Flagg,* 16 Gray 175 (1860)[1], they argued that after the vote, the road, although dubbed a "bridle road," remained, in effect, a public way.

The judge, as finder of the facts, might have drawn the inference that the "old highway" mentioned in deeds of lots to the north of the Schulzes' land, the path through the woods bordering their land on the west, and Jourdan Road in Montgomery to the south formed at one time a continuous road that was abandoned after the discontinuance vote in 1852. He would not have been obliged to draw the further inference that such road had been a public way where it abutted the Schulzes' land. Compare *United States* v. *125.07 Acres of Land,* 707 F.2d 11, 13-14 (1st Cir. 1983); *W.D. Cowles, Inc.* v.

---

[1] In *Flagg* v. *Flagg,* the selectmen of Boylston had located a way, termed a "bridle road," described by metes and bounds, running from the county road through pasture land. The March, 1809, town meeting accepted the way, recording in the minutes: "Art. 11th acted upon so far as to accept the laying out of a private way through the land of [S.F. and E.H.]." The plaintiff, through whose land the way ran, sought to hold the defendant (whose land also abutted the way but at a point further from the county road) liable in trespass for using the way to drive his cattle to pasture. Specifically, the plaintiff contended that a "bridle way" was restricted to use by horses and that "[a] man might well consent to the laying out of a bridle-way by his dwelling, or to receive small damages therefor, when he would not consent to the driving of horned cattle over his land." Two points were decided in this case: first, that a way laid out by the town as a private way was open to use by the public generally, the "private" designation serving to distinguish such a way from "public" ways or "town" ways, as to which the town has the statutory duty of upkeep (see *Opinion of the Justices,* 313 Mass. 779, 784 [1943]; *United States* v. *125.07 Acres of Land,* 707 F.2d 11, 14 [1st Cir. 1983]), and, second, that the phrase "bridle road" does not have "any such definite or well settled meaning in the law, or by common usage in this commonwealth, as to authorize us to infer that it was inserted in the location in the present instance with an intent to confine the right of way to a particular class of animals or other special mode of use." 16 Gray at 181.

*Woicekoski,* 7 Mass. App. Ct. at 19; *Fenn* v. *Middleborough,* 7 Mass. App. Ct. 80, 86-87 (1979); *Witteveld* v. *Haverhill,* 12 Mass. App. Ct. at 877 (a case very similar to this one on the evidence), which illustrate the reluctance of courts to impute public-way status to unpaved woodland roads, of uncertain origin, which have not been maintained in recent memory as public ways, and which the public could not reasonably expect to be maintained in defect-free condition. See also *Loriol* v. *Keene,* 343 Mass. 358 (1961). General Laws c. 82, § 21, and its predecessors have always authorized towns to discontinue either public ways or private ways. (As to "statutory" private ways generally, see *Casagrande* v. *Town Clerk of Harvard,* 377 Mass. 703 [1979]). The fact that a road connects to public ways at both ends does not require a conclusion that it is itself a public way. *Fenn* v. *Middleborough, supra* at 85.

Here, however, the judge declined even to draw the inference that the dirt path abutting the Schulzes' land on the west was a continuation of the "old highway" mentioned in ancient deeds of properties to the north or was the same as the road discontinued in 1852. The record gave ample reason for doubt. The discontinued road was presumably a way of the town, whether public or private. The word "highway" was normally used at the time to refer to county roads rather than town ways. *Denham* v. *County Commrs. of Bristol,* 108 Mass. 202, 205 (1871). Even town ways, in the last century, were, according to the Schulzes' expert witness, normally constructed not less than two rods wide, but the path abutting the Schulzes' land averaged less than one. It was marked, as the judge found after a view, by precipitous grades and outcroppings of ledge, and the town's zoning board, having noted in their "site inspection" that "one portion [of the path] was wet, despite the near zero degree temperature on the day of inspection," concluded it had "no reason to believe that this 'way' was ever more than a cart path or hiking trail." The judge did not err in accepting "secondary or tertiary" sources, such as road atlases, over the testimony of the expert witness based on "primary" sources (i.e., deeds). As the judge noted, nothing in the deed references carried the "old highway" south to the Schulzes' property,

and, while the expert had obviously done impressive research in the ancient records, significant portions of that testimony depend on references which may have been meaningful at trial but which are not comprehensible in the record before us, even with the aid of the chalk reproduced in the appendix.[2] We are, thus, not in the same position as was the trial judge to evaluate the results of the expert's research.

What has been said disposes of the Schulzes' appeal in relation to the judgment as well as the order denying a motion for a new trial. Both must be affirmed.

*So ordered.*

---

[2] We refer to such sentences in the expert's testimony as: "A-1 was conveyed by John Kirkland to Samuel Warner, who later conveyed to Silas Warner; Silas Warner then owning this, this, this, this, this, [and] this"; and, "Well the Hattie Stanton lot is made up of three parcels, the first of which is, in general, the parcel like this over to this line, up here, up here and across like that;" and, "The first parcel runs all the way from here over to about here."