## LARKIN HOLT *vs.* SOLOMON SARGENT.

Proof that the use of a public way has been general, uninterrupted and continuous, will warrant a jury in inferring that it has been laid out, appropriated or dedicated to the public.

A public way may be shown to have been discontinued by proof that it has been shut up, and the land enclosed by permanent fences, and occupied or improved for purposes inconsistent with its use as a public way, for forty years, by continuous acts of successive owners of an adjoining close.

A deed of land described as bounded on one side " by a proprietors' way " does not estop the grantee to deny the existence of the way, when the land on the other side of the way is owned by several persons between some of whom and the grantee there is no privity of estate.

In an action for breaking and entering the plaintiff's close, and carting gravel thereon, the plaintiff, upon the question of damages, may prove the cost of removing the gravel therefrom.

A right of way for all purposes is not restricted to one purpose, because the owner thereof has had occasion, for a long series of years, to use it for that purpose only.

ACTION OF TORT for breaking and entering the plaintiff's close in Cambridge. Answer, 1st. A public way over the close; 2d. A way over the same, which defendant had a right to use; that the plaintiff obstructed such way; and that the defendant removed such obstructions, and repaired the way so that he might use it.

At the trial in the court of common pleas in Middlesex at June term 1859, before *Mellen,* C. J., there was evidence tending to prove the following facts:

In the last century a canal was dug from Charles River through the marshes northwardly to high land; and a proprietors' way extended from the head of the canal across Marsh Lane, but there was no evidence that this had been laid out by any public authority. The canal generally flowed to within from thirty to fifty feet of Marsh Lane. No use had been made of the canal of late years, and the proprietors' way had ceased to be used below Marsh Lane, for any purpose except as a way to the marshes.

In 1803 William Winthrop was the owner of the land on the west side of the proprietors' way and the canal, and also of land on the east side of the canal and a part of the proprietors' way; and James Winthrop owned the land on the east side of the

rest of the proprietors' way as far as Marsh Lane. On the 16th of November 1803 William Winthrop conveyed to James Winthrop a parcel of land which "bounds easterly on a proprietors' way, then runs along the westerly side of the canal;" and in 1821 James Winthrop conveyed a part of this land to the plaintiff, bounded " northeasterly on Marsh Lane formerly so called, southeasterly by a proprietors' way to the northwestern corner of the canal." On the same 16th of November 1803 James Winthrop conveyed to William Winthrop his land on the east side of the proprietors' way, bounded " westerly partly on a street formerly called Crooked Lane, and partly on a proprietors' way ; " which came by mesne conveyances to one Dillingham, who now owns it. William Winthrop died in 1825, seised of the rest of the land on the east side of the proprietors' way and the canal, which remained unimproved, except that his heirs sold the crops of grass growing thereon, with the right to carry off the same over the proprietors' way, until 1856, when they conveyed to the defendant.

The marshes between Marsh Lane and Charles River, on each side of the canal, were òpen and unenclosed, until about forty five years ago, when they were enclosed by a fence on the line of Marsh Lane, and have been ever since. About the same time a rail fence with bars was built across the proprietors' way on the line of Marsh Lane, which remained until 1825, when the plaintiff built a board fence across it, leaving a large gate at the head of the way for teams, which was generally locked or otherwise fastened. In 1849 Marsh Lane was raised and the proprietors' way repaired by the city of Cambridge on the plaintiff's petition, wherein he alleged that it was a private way, which he had the right to use. In 1856 the plaintiff substituted a small gate for foot passengers in place of the large one.

In the fall of 1856 the defendant cut down the fence across this way, and passed over that part of it which ran between the lands of the plaintiff and Dillingham to the marshes, for the purpose of carting gravel to raise and improve that part of the way near the head of the canal, and carted a thousand loads or more of gravel upon his marsh.

The defendant requested the court to instruct the jury as follows : 1st. If there was a public way, or a proprietors' way, over the place of the alleged trespass, non-user thereof would not have the effect to discontinue it. 2d. If the proprietors of adjoining lands once had a right to the use of this way for all purposes, and afterwards they had no occasion to and did not use it, except to cart away hay, they would not by such non-user lose the right to use the way for other purposes. 3d. A public right cannot be reduced or limited to a private right by mere non-user. 4th. If there was once a public way over the premises, the plaintiff could not, by merely enclosing it with fences, deprive the public of the right to use it. 5th. The plaintiff is estopped by his deed to deny that there is a public or proprietors' way over the premises. 6th. The recital in the deed to the plaintiff is evidence that there was a public or proprietors' way over the premises. 7th. If there was such a way, the adjoining proprietors had a right to use it for all purposes. 8th. One proprietor could not, by any use of the way, deprive an adjoining proprietor of his use of the same. 9th. The plaintiff's petition to the city of Cambridge is inconsistent with, and conclusive evidence against, his claim to the premises. 10th. If the fee of the way was in William Winthrop in 1803, it remained in him in 1821, when James Winthrop conveyed to the plaintiff, even if James Winthrop had previously enclosed the way, with the land sold by him to the plaintiff; for James Winthrop had not been a disseisor for twenty years, and the plaintiff could not tack his disseisin to his own.

The presiding judge gave the first, third, sixth and seventh instructions requested ; refused the second and eighth ; as to the ninth, instructed the jury that the plaintiff's claim of a right of way was inconsistent with, but not conclusive proof against, his ownership of the premises ; gave the tenth instruction, except as to the plaintiff's tacking his own disseisin to that of James Winthrop ; and further instructed the jury that the deeds of William Winthrop to James Winthrop, of James Winthrop to William Winthrop, and of James Winthrop to the plaintiff amounted to covenants on the part of the grantors, and a con

tract or assent on the part of the grantees, that there was at the time of those deeds a proprietors' way over these premises; that if the way was a public way by dedication, it would not be lost by ceasing to be used for forty years as such, but that the enclosing by the plaintiff of the premises by bars and gates, keeping a continuous and exclusive occupation thereof against the public for more than forty years, would discontinue a public way; that the plaintiff's possession would be a disseisin of all persons, except such as had rights there, provided his occupation was exclusive; that if the fee had been in the heirs of William Winthrop, or in strangers, and the plaintiff had enclosed the same, and claimed title to it with the knowledge of the owners, he would acquire a fee in the same by disseisin, although during the same time the heirs of Winthrop retained or acquired a right to carry off their hay from their marshes over the same premises.

During the trial the plaintiff asked a witness the cost of carting off the gravel, claiming this as an item of damages. The defendant objected to the evidence, unless the plaintiff proved that the gravel was an injury. But the court admitted the question to be answered, as the gravel was laid on land enclosed and in occupation of the plaintiff for raising grass and other purposes, and the grass was very near the plaintiff's house.

The jury found a verdict for the plaintiff; and further found, in answer to questions from the court, that there was not a public way over the premises at the time of the alleged trespass, and that there was a private right of way over them for the sole purpose of carrying off hay from the adjacent marshes. The defendant alleged exceptions.

*T. H. Sweetser & W. P. Webster,* for the defendant.

*C. G. Thomas,* for the plaintiff.

BIGELOW, J. Certain questions in this case were properly submitted to the consideration of the jury under instructions to which there is no valid ground of exception.

1. The first and leading inquiry was, whether the way, called in the deeds under which the plaintiff claims title a " proprietors' way," had ever become a public way, so that the defendant

could exercise a right to use it in common with all other persons having occasion to pass in that direction. This was a question of fact, depending mainly on proof that the use of the way had been so general, uninterrupted and continuous as to warrant the inference that it had been laid out, appropriated or dedicated by the proprietors of the adjoining land to the public. *Jennings* v. *Tisbury,* 5 Gray, 73. *Taylor* v. *Boston Water Power Co.* 12 Gray, 415.

2. If it ever had been a public way, it was then material to consider whether it had ever been discontinued so as to defeat the right of the public to use and enjoy it. This was also a question of fact. It was competent for the plaintiff to show, in proof of this issue, that the alleged way had been shut up, the land enclosed by permanent fences or walls, and occupied or improved for purposes inconsistent with its use as a public way, for a long series of years, and any other facts sufficient to found a legal presumption upon, that the way had been discontinued by competent authority. Such a presumption would stand on the same grounds as that of a non-appearing grant, or a lost record, and if properly supported by evidence would justify the jury in inferring that whatever was necessary to give legal effect and operation to a discontinuance of the way was rightly done. In this view, evidence that the plaintiff's grantor, as early as 1803, had erected a fence across the alleged way, tended directly to sustain the presumption that it had been discontinued as a public way. Nor can we see that the doctrine of disseisin, or of tacking the adverse possessions of successive owners, had any bearing on the issue before the jury. It was not a question of title to the soil. The defendant did not claim the fee in that part of the plaintiff's close in which the main trespass was alleged to have been committed, but only the easement of a right of way therein. This easement, whether public or private, might be destroyed or defeated by a discontinuance of the way; and its obstruction by successive owners or occupiers of the close, by whatever right or title they were possessed of the premises, was competent proof as tending to show that the right of way no longer existed.

3. The further objection taken by the defendant, that the plaintiff is estopped by his deed, which bounded the lot granted to him " southeasterly by a proprietors' way," from denying the existence of such way, is not tenable.   Such estoppel'might exist if the defendant owned the whole premises next adjoining those of the plaintiff on the easterly side, so that he held as privy in estate along the entire line where the way is claimed to exist.   But that part of the premises next adjoining those of the plaintiff, where the principal acts of trespass were committed, belongs to a third person.   To this estate the defendant is a stranger, and estoppels by deed bind only parties or privies.

4. The evidence as to the cost of removing the gravel from the plaintiff's premises, which had been placed there by the defendant, was rightly admitted.   It was not a measure of the plaintiff's damages, nor was it submitted to the jury as such by the court.   But it was a fact, in connection with other circumstances, proper to be considered by the jury in estimating the extent of the injury done to the plaintiff's land.

5. The only remaining question arises on the refusal of the court to instruct the jury according to the request contained in the second prayer for instructions.   This refusal was clearly erroneous.   If the jury were satisfied that there was a proprietors' way over the land of the plaintiff, originally used and enjoyed for general purposes by the adjoining owners of the land, such right would not be restricted or impaired because the owners of the easement had had occasion to use it only for taking hay off the premises.   Such use was all that was necessary or useful while their estates were unoccupied or unimproved, and no access was required to them except to take off the annual crop of grass.   But it was no evidence of an intent on their part to abandon the right to use the way for other purposes when it might become useful or expedient so to do ; and the jury would not be warranted in inferring from such non-user any relinquishment or abandonment of the original right to use the way as a means of access to the premises adjoining, without restriction or limitation.   But as the ruling did not in any way affect the special finding of the jury on the question of the exist-

ence of a public way over the land of the plaintiff, it will not be necessary to reopen the whole case, but only to send it back for trial on the question of the extent of the easement of the plaintiff in the private way, which the jury at the former trial have found to exist over the plaintiff's premises.

*Exceptions sustained.*