## MONTRAVILLE FLAGG *vs.* NAHUM FLAGG.

A private way, duly established under *St.* 1786, c. 67, § 1, for the use of one or more individuals of a town or proprietors therein, is not discontinued by the unity in one person of title to and possession of all the land through which it is located.

In the location of a private way laid out by the selectmen and accepted by the town, a description of it as "a bridle road" does not confine the right of way to a particular class of animals or special mode of use.

A quitclaim deed, securing to the grantor a right to use a way over the land granted for a certain purpose, and with a covenant of warranty against all persons claiming by or under the grantor, does not estop him to use the way for other purposes, if it had previously been legally laid out by the selectmen and accepted by the town as a private way.

ACTION OF TORT for trespass on real estate. The case was submitted to the judgment of the court upon the following agreed statement of facts:

" The alleged trespass consisted in the driving of the defendant's cows to and from a pasture owned by him within the limits of a way in the town of Boylston, which was located in

November 1808 by the selectmen of that town, by a written
location, describing the same by metes and bounds, in which
the same is called ' Stephen Flagg, Jr. and Eliakim Hastings
road, a bridle road      rods wide.' 'At the town meeting held
in March 1809, under an article in the warrant for that purpose,
this way was accepted in the following terms : ' Art. 11th acted
upon so far as to accept of the laying out of a private way
through land of Stephen Flagg, Jr. and Eliakim Hastings.   See
Minutes of Town Roads, p. 20,' which page contains the said
location by metes and bounds.

" At the date of the location the land through which the way
was laid out was owned, one part by Eliakim Hastings and
another part by Stephen Flagg, Jr. ; and the way ran from the
county road to that part of the land of said Flagg which is
now owned by the defendant, and is the pasture to and from
which he drove his cows, but did not connect at that end with
any public road.

" After the death of said Flagg, one of his sons, Abijah Flagg,
who was the father of both the plaintiff and the defendant, be-
came, by different purchases and conveyances, made at different
times, the owner of all the land through which the way was
located.   The last of these conveyances to him was made April
1st 1819.   After this time he occupied the entire estate as his
home farm until the year 1838, when he conveyed two undi-
vided thirds thereof to the plaintiff and the defendant as tenants
in common.   Abijah died seised of the remaining undivided
third in 1850, and by his will devised it to the plaintiff and
defendant in common.   On the 26th of October 1852 they
made mutual conveyances of the whole estate by quitclaim
deeds ; each with a covenant of warranty against lawful claims
and demands of all persons claiming by or under the grantor;
and that from the defendant to the plaintiff reserving the ' privi-
lege of using the cart path to cart wood, hay and manure
to and from my house to land this day conveyed to me by
said Montraville during the time the said Nahum shall per-
sonally occupy the premises hereby conveyed.'   The cart path
thus mentioned is that portion of the located way in which the

alleged trespass was committed. A part of the way as origi-
nally located is included within the limits assigned to the plain-
tiff, and a part within the limits assigned to the defendant, and
both the plaintiff and defendant use the lower part of the way
as their only access from their dwellings to the county road.

" It is not claimed that the defendant is entitled to a way of
necessity to and from the pasture, but he justifies the alleged
trespass by reason of the aforesaid location. The plaintiff con-
tends that the location, and all rights derived under the same,
were extinguished by the unity of title and possession in
Abijah Flagg."

*G. F. Hoar*, ( *C. Devens, Jr.* with him,) for the plaintiff. 1. If
any way ever existed, it has ceased. If it was a right personal
to those for whose use it was laid out, the defendant cannot
justify. If it was appurtenant to their lands, it has been extin-
guished by unity of seizin and title. Whether the right became
merged in the general ownership depends, not upon the mode
of creation, but upon the nature of the thing created.

The right of way was created by public authority; its enjoy-
ment is perhaps to some degree protected by public remedies;
and the public may, if they see fit, contribute toward its pur-
chase, and may discontinue it when the reason for its creation
ceases. *St.* 1786, *c.* 67, §§ 1, 2, 7. But when created and
enjoyed, it is essentially nothing more than a right of way for
the use of an individual, who may use it or refrain from using
it at his pleasure, and may grant it as appurtenant to the lands
to which it is annexed. No other person has any rights in it.
Sullivan on Land Titles, 287–290. The town is not only not
obliged, but not authorized, to keep it in repair. *St.* 1786, *c.* 81,
§ 1. Rev. Sts. *c.* 25, §§ 1, 8. The authority given to any indi-
vidual to remove obstructions is not extended to it; and no
liability is created by statute for defects in it. Rev. Sts. *c.* 25,
§§ 21, 22. The statutes treat it as private property, authorizing
the owners in some cases to organize as a corporation. Rev.
Sts. *c.* 25, § 34. Railroad corporations cannot alter its course,
as they may that of public ways which they are bound to leave
open; but the individual proprietors of the easement are entitled

to damages, when it is obstructed by a railroad.  Rev. Sts. *c.* 39, §§ 70, 71.  The commissioners on the Rev. Sts. *c.* 24, § 61, *note*, imply their opinion that it is a private easement only.

In New York, under a similar system, an action on the case has been held to lie in behalf of the person authorized to use the way, for its unauthorized use by another, because the plaintiff is solely charged with the expense of repairing.  *Lambert* v. *Hoke*, 14 Johns. 383.  The cases as to " private highways " in New Hampshire and " pent roads " in Vermont, cited for the defendants, arose under wholly different statutes.

2.  The way located was merely a " bridle-road," which gave no right to a drift-way for cattle.  The term " bridle-way " had a well defined meaning at common law, being equivalent to horse-way, and does not include drift-ways.  *Allen* v. *Ormond*, 8 East, 4 & note.  *The King* v. *Salop*, 13 East, 95.  *Logan* v. *Burton*, 5 B. & C. 513.  *Ballard* v. *Dyson*, 1 Taunt. 279.  *Regina* v. *Sainthill*, 2 Ld. Raym. 1174; *S. C.* 6 Mod. 255.  *The King* v. *Spiller*, Style, 108.  *Madox's case*, Cro. Eliz. 63.  2 Hawk. *c.* 76, § 1.  2 Selw. N. P. 1315.  *St.* 13 G. 3, *c.* 78, § 19.  Gale & Whatley on Easements, 201.  2 Bl. Com. (Chit. ed.) 38, note 28.  Barclay on Highways, 370.  A man might well consent to the laying out of a bridle-way by his dwelling, or to receive small damages therefor, when he would not consent to the driving of horned cattle over his land.

3.  The deed from the defendant to the plaintiff, covenanting to warrant against all persons claiming under the grantor, and defining and restricting the use which he is to make of the cart path, estops him to assert that he is a person for whose use the way in question was laid out.

*D. Foster & G. W. Baldwin*, for the defendant, cited *Sts.* 1785, *c.* 75, § 7; 1786, *c.* 67, §§ 1, 2, 3, 7; *c.* 81, §§ 5, 7; Anc. Chart. 269, 459, 504; *Cragie* v. *Mellen*, 6 Mass. 7; *Commonwealth* v. *Gowen*, 7 Mass. 378; *Avery* v. *Stewart*, 1 Cush. 496; *Metcalf* v. *Bingham*, 3 N. H. 459; *Clark* v. *Boston, Concord & Montreal Railroad*, 4 Foster, 118; *Whitingham* v. *Bowen*, 22 Verm. 317, and cases cited.

BIGELOW, C. J.  By *St.* 1786, *c.* 67, § 1, which embodied

the provincial statutes directing the method of laying out high-
ways and other roads in a town, no distinction is made between
those ways which were established for " the use of such town
only," and those which were laid out " for the use of one or
more individuals thereof or proprietors therein." The term
" private or particular way " is there used, not to designate or
define the use or purpose for which it was laid out, or the
nature or extent of the easement which it created, but in con-
tradistinction to a highway or public road, which was not con-
fined within the boundaries or territory of a town, but extended
from town to town or place to place, and which could be laid
out only by the court of sessions. Nor was it intended by the
phrases " for the use of such town only," or " for the use of one
or more individuals thereof or proprietors therein," to limit the
easement or rights created by the way to the inhabitants of the
town or the owners of land therein, or to particular individuals,
but to describe it as a road for local accommodation and con-·
venience, which the selectmen were empowered to lay out at
the expense of the town or the persons who would receive the
greatest benefit from the establishment of the way. This view
of the construction of the language of the statute was taken
in the early case of *Cragie* v. *Mellen,* 6 Mass. 13, in which the
court say that it is evident that the intention of the legislature
in using these words was only to distinguish the cases within
the authority of towns by their selectmen from those committed
to the court of sessions. The statute was evidently framed
with a design to give jurisdiction and define its extent in the
matter of laying out private ways for the use of towns and
individuals, but was not intended to declare or limit the use or
easement which would be created in them by its exercise. It
follows that the argument, in support of the position that a pri-
vate way laid out by a town for the use or benefit of individ-
uals creates only a right personal to those for whose conven-
ience and accommodation it was originally established or
appurtenant to their estates, is not sustained by a just inter-
pretation of the words of the statute. Nor can we see any
good reason for holding that such is the legal effect of the

establishment of such ways. On the contrary, there are decisive considerations which lead to an opposite conclusion. In the first place, as has been already stated, private ways are put by the statute on the same footing as town ways; but no one would contend, because the latter are laid out for the use of the town only, that after they are established, the right to their use and enjoyment is personal to the inhabitants of the town. In the next place, it is inconsistent with the whole scope of the provisions of the statutes relating to such ways, to construe them as applicable only to the creation and protection of private rights and easements. They are laid out by public officers and accepted by a vote of the town; they can be discontinued by public authority, even against the consent of those for whose accommodation they were originally laid out; the damages occasioned by their construction may be paid in whole or in part from the treasury of the town; they cannot be lawfully encumbranced or obstructed by any one by means of fences or buildings erected within their limits, unless they have been suffered to remain there for a period of time sufficiently long to authorize a similar obstruction in a highway, and such unlawful obstructions are treated as nuisances; and finally, it would not be competent for selectmen and towns to locate and lay them out for private use only as personal rights or easements belonging to individuals, because no one can be authorized to create an easement in the land of one against his consent for the benefit of another. It would be a violation of the fundamental principle by which private property is made secure from any sequestration or appropriation except for a public use. It is a mistake therefore to suppose that a private way laid out under *St.* 1786, *c.* 67, § 1, creates a right or easement which is personal in its nature and appurtenant to land, so that it may be extinguished by unity of seisin and title. It is a private way, only as distinguished from a highway or common road, and because in its origin it was laid out for the accommodation and benefit of individuals. But when laid out and established, it becomes a way or easement in its nature public, which any one having occasion may use and enjoy until it is lawfully discontinued.

Such seems to have been the character of the way which was laid out by the selectmen and the town of Boylston in the year 1809, and concerning which the present controversy has arisen. It is called in the vote of the town a private way ; nor is there any limitation prescribed as to the mode of its use and enjoyment.

It was suggested that a restriction was imposed by the use of the term "a bridle road," in the location by the selectmen. But we do not think this phrase has any such definite or well settled meaning in the law, or by common usage in this commonwealth, as to authorize us to infer that it was inserted in the location in the present instance with an intent to confine the right of way to a particular class of animals or other special mode of use.

It is hardly necessary to add that the defendant is not debarred from the use of the road by the covenant in his deed to the plaintiff. Such a covenant cannot operate by way of estoppel so as to prevent a party from claiming a right to enjoy a public way or easement. *Judgment for the defendant.*