FREDERICK REED *vs.* LILLIAN S. MAYO & another.

Norfolk. March 4, 1915. — April 1, 1915.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & CARROLL, JJ.

*Way,* Public: ancient public way, Laying out. *Evidence,* Admission by deed,
Ancient records, Presumptions and burden of proof.

At the trial of a petition for the registration of the title to certain land, a question
at issue was, whether one side of the land was bounded by the end of a public
way. There was evidence that in 1852 a vote of a meeting of the town in which
the land was situated had referred to the selectmen an article relating to the
laying out of a new road over the location of the way in question, that at a
town meeting held about a month later, under an article in the warrant "to
hear the report of any committee that may be ready to do the same," the select-
men reported recommending the laying out and stating that the owner of the

land through which the way ran, the predecessor in title of the respondent, had agreed to give land for the way, to fence it and to construct the way to the satisfaction of the selectmen for $150; that the report of the selectmen was "accepted;" that since that time the way had been used by the public, that the town continuously had made repairs and had done work upon it under a claim that it was a public way, and that, throughout the respondent's chain of title and in two mortgages which the respondent had given, the way had been referred to as a town way. *Held,* that a finding that the way was an ancient public way was warranted.

Even though, in the records of town meetings in 1852, recording the reference to the selectmen of a petition for the laying out of a town way, a report of the selectmen on the subject at a subsequent town meeting and a vote "to accept" the report, there is no record that the laying out with boundaries and measurements had been filed with the town clerk seven days before the meeting as required by Rev. Sts. c. 24, § 69, it may be presumed or inferred after sixty years, especially where it appears that the only owner of land through which the way was to pass was a petitioner for its laying out, that the statutory requirement was complied with.

PETITION, filed in the Land Court on February 13, 1913, for the registration of the title to certain land in Wellesley, described in the petition as bounded "easterly by the westerly end of a town highway." The respondent, who owned land on both sides of the alleged town highway, denied that it was a town highway and that the petitioner had any rights of way appurtenant to his land.

The case was heard by *Davis,* J. The material portions of the evidence at the hearing before him are described in the opinion. He found that the laying out of the way in question by the town in 1852 was legal and that the petitioner correctly described his land as bounding on the westerly end of such town way; and, taking into consideration that action of the town and the other evidence recited in the opinion, he also found that the road was an ancient public way, ordered a decree for the petitioner and, at the request of the parties, reported the case for determination by this court.

The case was submitted on briefs.

*H. S. Avery,* for the respondent.

*H. C. Mulligan,* for the petitioner.

DE COURCY, J. A portion of the easterly line of the petitioner's tract is described as bounded "by the western end of a town highway leading to Weston Road." The judge of the Land Court, on the facts found by him, ruled that the way referred to (known as Mayo Road) was a town road, and ordered a decree accordingly.

This way had its beginning more than sixty years ago, when it appears that one James Roy, the respondent's predecessor in title, agreed to give the land therefor, to fence it and to make the road to the acceptance of the selectmen, for $150. Certain proceedings on the subject of laying out the way in question took place at town meetings held in April and May, 1852. Since that time, according to the findings of the Land Court, Mayo Road has been used by the public, and the town has made repairs continuously and has done other work on the road, under a claim by its officers that this was a public way. Further, throughout the respondent's own chain of title, including the immediate deed to her and mortgages given by her, it has been mentioned as a town road running through her land. On these facts, unaided by the effect of the town meeting records, we should be inclined to say that the Land Court was warranted in finding that this ancient way was a town way. The admissions of the respondent and of her predecessor in title tend to prove the existence of such a way. *Osgood* v. *Coates,* 1 Allen, 77. *Blake* v. *Everett,* 1 Allen, 248. *Simpson* v. *Dix,* 131 Mass. 179. See *Driscoll* v. *Smith,* 184 Mass. 221. The making of repairs by the town is evidence of the existence of a way located and appropriated to the public use. *Commonwealth* v. *Holliston,* 107 Mass. 232. *Commonwealth* v. *Matthews,* 122 Mass. 60. And it well may be that the uninterrupted adverse use of Mayo Road since 1852 was enough to establish a way by prescription. *Bassett* v. *Harwich,* 180 Mass. 585.

The town records show that the warrant for a town meeting to be held on April 5, 1852, contained an article "to see if the town will discontinue a part of the old road leading from the Parker place to the Methodist Meeting House in West Needham. Also to lay out a new road about forty-seven rods long running northeasterly from land of Ephraim Loker and James Roy to the new road on Pine Plain, so called, agreeably to the petition of James Roy and others." At the town meeting it was voted to refer this article to the selectmen. At a town meeting held on May 3, 1852, and apparently under the article * in the warrant referring to "the

* This article read: "To hear the report of any committees that may be ready to do the same."

report of any committees," the selectmen made a report,* recommending the discontinuance of the old road and the laying out of the road in question; and the town voted to accept it. The article in the warrant for the May meeting did not explicitly state that the report of the selectmen respecting the location of a new road was to be acted upon. See Rev. Sts. c. 15, § 21, then in force. But it is evident that the subject of laying out Mayo Road was carried over from the April to the May meeting, and that the report of the selectmen was regarded as the report of a "committee," within the meaning of the May warrant. *Alden* v. *Rounseville,* 7 Met. 218. *Fuller* v. *Groton,* 11 Gray, 340. *Geer* v. *Fleming,* 110 Mass. 39. It is urged that so far as the record shows, the laying out, with the boundaries and measurements of the way, had not been filed in the office of the town clerk seven days before the meeting, as then required by Rev. Sts. c. 24, § 69. It does not necessarily follow, however, that the provisions of the statute were not complied with. The main purpose of giving seven days' notice of the intention to lay out the way was to inform the landowner as to what portion of his land was to be taken. See *Jeffries* v. *Swampscott,* 105 Mass. 535. In this instance the only owner interested was James Roy, who had petitioned the town to lay out Mayo Road and had given the land needed for that purpose. Even though evidence of notice and filing does not appear in the town records, it may be presumed or inferred after sixty years that the statutory requirement was complied with. All reasonable presumptions are to be taken in favor of such ancient records.

In view of all the facts, — the records, the construction of the road and its long user, the occasional repairs, and other circumstances tending to show that Mayo Road originally was laid out as a town way, — we cannot say that the judge of the Land Court was wrong in finding that it is an ancient public way. *Commonwealth* v. *Belding,* 13 Met. 10. *Avery* v. *Stewart,* 1 Cush. 496. *Holyoke* v. *Hadley Co.* 174 Mass. 424. And see *Harrington* v. *Harrington,* 1 Met. 404.

---

* In this report it was stated that "said Roy [who had petitioned for the laying out] agrees to give the land and fence it and make the road to the acceptance of the selectmen for $150."

In accordance with the report a decree is to be entered for the petitioner.

*Ordered accordingly.*