**UNITED STATES of America,
Plaintiff, Appellee,**

v.

**125.07 ACRES OF LAND, MORE OR LESS, etc., et al., Julia G. Hall, et al., Defendants-Landowners, Appellants.**

**No. 82–1785.**

United States Court of Appeals,
First Circuit.

Argued March 10, 1983.
Decided May 12, 1983.

**12**

John D. Hallisey, Orleans, Mass., for defendants-landowners, appellants.

Edward E. Veara, Paul V. Benatti, and Zisson & Veara, South Dennis, Mass., on brief, for intervenor Town of Truro.

Joseph J. McGovern, Asst. U.S. Atty., Boston, Mass., with whom William F. Weld, U.S. Atty., Boston, Mass., was on brief, for plaintiff, appellee.

Before CAMPBELL and BREYER, Circuit Judges, and MALETZ,* Senior Judge.

BREYER, Circuit Judge.

This is the second appeal arising out of the efforts of a federal commission to value, for condemnation purposes, a tract of land in Truro. The tract, which is to become part of the Cape Cod National Seashore, was valued as if it were to be used for residential subdivision—its highest and best use. *See Olson v. United States,* 292 U.S.

* Of the United States Court of International Trade, sitting by designation.

246, 255, 54 S.Ct. 704, 708, 78 L.Ed. 1236 (1934); *United States v. 320.0 Acres of Land,* 605 F.2d 762, 781 (5th Cir.1979). We affirmed that valuation in the first appeal, *United States v. 125.07 Acres of Land,* 667 F.2d 243 (1st Cir.1981), with one exception: The Commission (and subsequently the district court) had subtracted from the landowners' award the cost of upgrading Pond Road, an ancient cart track now overgrown with brush and trees. The Commission reasoned that, to develop a subdivision, the landowners would have to pay to clear this "road" and to improve it. The landowners, however, contended that the hypothetical cost of upgrading should not be charged to them because Pond Road is a "town way" for which the town is financially responsible. *See* Mass.Gen.Laws ch. 84 § 1 ("Repair of ... town ways at expense of towns"). They added that Judge Garrity had so decided in a related proceeding, *United States v. Certain Parcels of Land in Barnstable County,* No. 74–182–G (D.Mass. Aug. 15, 1980).

We remanded with instructions to determine just what Judge Garrity had decided. We added that the landowners were "either to show that [the status] issue was decided by Judge Garrity or to litigate it *de novo."* 667 F.2d at 255. They were to bear the burden of proving that the town had an obligation to pay for the road's repair. *Id.; Witteveld v. City of Haverhill,* 12 Mass. App. 876, 421 N.E.2d 783, 785 (1981) (citing *Commonwealth v. Hayden,* 354 Mass. 727, 728, 242 N.E.2d 431 (1968)).

On remand, the case returned to Chief Judge Caffrey. The parties obtained a memorandum from Judge Garrity who wrote that he had *not* decided that the town was financially responsible for the road. Judge Caffrey then rejected the landowners' claims. The landowners appeal. We affirm Judge Caffrey's decision.

■ Appellants argue that, in Massachusetts, a "town has a duty to maintain" a town road "free of defects" if "it has become public in character" by (for example) "a laying out by public authority in the manner prescribed by statute." *Fenn v. Town of Middleborough,* 7 Mass.App. 80, 83–84, 386 N.E.2d 740, 742 (1979). They state that, since Judge Garrity, in the related case, held that Pond Road was not "private" and that it was laid out by the town, it must be a "town road" that the town has a duty to maintain. Appellants' argument fails, however. Even if we assume all other requirements for "collateral estoppel" are met, *see* Restatement (Second) of Judgments § 27; 1B J. Moore, *Federal Practice* ¶ 0.405[3] (2d ed. 1982), when Judge Garrity used the words "private road" and "private way," he was using them in reference to a totally different legal issue, namely the issue of *public access.* The fact that Pond Road is public for purposes of *access* does not show that Truro has an obligation to maintain it.

Judge Garrity made his initial decision in response to a landowners' request that he declare that Pond Road gave them access to their property. In support of their motion, they submitted several modern maps and a Truro town document, dated March 6, 1718, describing a "way laid out in sd. Truroe." They claimed that this way was Pond Road; the government said it was not. The day before Judge Garrity heard argument, they filed a paper making a new argument, namely, that even if Pond Road was not a public way, the landowners themselves (but not the general public) had a right to use it for access under the principle of "easements" established by "necessity and user." *See Davis v. Sikes,* 254 Mass. 540, 545–47, 151 N.E. 291 (1926); *Brigham v. Smith,* 70 Mass. (4 Grey) 297 (1855); J. Cribbet, *Principles of the Law of Property* 337–41 (2d ed. 1975). Judge Garrity then ruled as follows:

> First, with respect to the private way, I find that there was no private way, or at least that there has been insufficient showing that there is a private way. The reason is partly because I did not even receive this supplemental memo until the hearing started, and everything I had urged that it be declared to be a public road.

\*     \*     \*     \*     \*     \*

On the other hand, I do find that it was a public road, created back in [1718] . . . . [W]e start off with the proposition that the town laid out two proprietors' ways· . . . .

He used the maps and the document to show "that the two ways that were laid out by the proprietors back in 1718 are the two ways that are shown on the map" and that one of them is Pond Road. In his later order, Judge Garrity referred to Pond Road as

a public road . . . created by the Proprietors of the Town of Truro by the . . . language which appears in the Records of the Town of Truro.

In stating that Pond Road was not "private," Judge Garrity thus meant (and held) that the road was not "wholly the subject of private ownership" open to use by others only with the owner's "license or permission." *See Opinion of the Justices,* 313 Mass. 779, 782–83, 47 N.E.2d 260 (1943). In stating that the town had "laid out" the road as "public," he meant (and held) only that the general public could freely use it. But these holdings do not suffice for appellants' purposes, for in 1718, at least three different sorts of roads were "public" and not "private" for purposes of access. And with respect to at least one, the town would have no maintenance obligation.

■ The relevant law is contained in the laws of the Province of Massachusetts for the years 1693–94 and 1713–14. They describe the three kinds of "public roads" that existed in eighteenth century Massachusetts. *See Opinion of the Justices, supra; Denham v. Commissioners of Bristol,* 108 Mass. 202, 205 (1871). First, there were highways, laid out and paid for by the county. Prov.Laws 1693–94 ch. 6, § 3. Second, there were town ways, laid out and paid for by the town. Prov.Laws 1693–94 ch. 6, § 4. Third, there were certain "particular and private ways" necessary for access to "the lands of particular persons or proprietors." These were also laid out by the town, but they might be paid for by either the town or the "inhabitants or proprietors who desire and reap the benefit of

the same." Prov.Laws 1713–14 ch. 8, § 1. Such a road is public in the sense of providing access, *see Denham v. Commissioner of Bristol, supra; Flagg v. Flagg,* 82 Mass. (16 Gray) 175 (1860), but its latter day descendant is the "statutory private way," Mass. Gen.Laws ch. 82 § 21, *see Casagrande v. Town Clerk of Harvard,* 377 Mass. 703, 387 N.E.2d 571, 574 (Mass.1979), a kind of road for which neither town, county, nor Commonwealth bears upkeep responsibility. *See* Mass.Gen.Laws ch. 40, § 6N; *id.* ch. 84, § 14; *Opinion of the Justices,* 313 Mass. at 784, 47 N.E.2d 260; *Butchers' Slaughtering and Melting Ass'n v. Boston,* 139 Mass. 290, 292, 30 N.E. 94 (1885).

The fact that these old statutes do not use the word "public" to refer to roads of the second and third variety shows the danger of making broad public/private distinctions in this area. Terminology has changed over the years. The *town* road was called "private" in 1693 (to distinguish it from a *county* road, *Flagg v. Flagg,* 82 Mass. (16 Gray) at 179; we call it "public" today for all purposes. Moreover, today we may call a road "public, not private" to indicate that the public has access, as Judge Garrity did. *Or* we may refer to it, more technically, as "public, not private" to indicate the government has an upkeep obligation, *see Fenn v. Town of Middleborough,* 386 N.E.2d at 742.

■ As we have said, Judge Garrity used the term only to indicate access rights, and indeed, he could not have meant more. The ancient statutes make clear that whether a road is public or private for upkeep purposes depends, not just upon *whether* it was laid out, but upon *why* it was laid out. The "why" of it is best indicated by who paid for it, and the record before Judge Garrity was totally silent on that question. *See Fenn v. Town of Middleborough,* 386 N.E.2d at 744 (ancient maps alone did not show that the road was public, for the maps were "equally consistent with the ways having been private over the one hundred and twenty-one years of their proven existence").

In sum, the maximum assistance that the landowners could have obtained from Judge Garrity's ruling is a finding that the town of Truro laid out Pond Road for access purposes. Whether the town has an obligation to pay for its upkeep, however, depends, at a minimum, upon whether the layout was made under the 1693 or the 1713 statute, and, if under the 1713 statute, who was meant to pay for it. The landowners presented no documentary evidence to clarify the town's intent in 1718, nor, in the absence of such records, did they present any evidence of use, construction, or repair, from which a court could infer whether the road was laid out as a town, or as a private, way. *See Puffer v. City of Beverly,* 345 Mass. 396, 187 N.E.2d 840 (1963); *Reed v. Mayo,* 220 Mass. 565, 568, 108 N.E. 366 (1915); *Holt v. Sargent,* 81 Mass. (15 Gray) 97, 100 (1860). Since the landowners bore the burden of showing that the town had an upkeep obligation, the district court correctly ruled against them.

In light of this failure of proof, we need not decide whether the district court correctly found that the road had been "discontinued" under *Holt, supra,* which permits a court to infer from lengthy disuse that a road has been discontinued by the appropriate public authority, and the record lost. *Holt v. Sargent,* 81 Mass. (15 Gray) at 101. *See* Mass.Gen.Laws ch. 82, §§ 21 & 32A; *Mahan v. City of Rockport,* 287 Mass. 34, 37–38, 190 N.E. 810 (1934) (a way once duly laid out continues to be such until legally discontinued; mere lack of use does not support a finding of discontinuance).

The landowners ask for a remand and a trial *de novo* on the Pond Road issue. But we stated in remanding the case initially that they must either "show this issue was decided by Judge Garrity or ... litigate it *de novo.*" 667 F.2d at 255. Their arguments on remand were entirely based upon Judge Garrity's opinion; they did not mention trial *de novo* until they lost and sought reconsideration, pursuant to Fed.R. Civ.P. 59. The district court's refusal to reopen the issue for a trial at such a late stage was completely reasonable. *See*

*United States v. 329.73 Acres of Land,* 666 F.2d 281, 284 (5th Cir.1982); *Nimrod v. Sylvester,* 369 F.2d 870, 873 (1st Cir.1966).

The landowners also seek to question the Commissioners' method of valuing the land. Our remand, however, was limited to a specific issue; it did not permit them to raise this question. *Eubank Heights Apts. v. Lebow,* 669 F.2d 20 (1st Cir.1982). The proper time for them to have raised this question was in their first appeal; their failure to raise it then precludes them from raising it now. *Raxton Corp. v. Anania Associates, Inc.,* 668 F.2d 622, 624 (1st Cir. 1982); *see also Johnston v. Holiday Inns, Inc.,* 595 F.2d 890, 894 (1st Cir.1979).

The decision of the district court is *affirmed.*