Tucker, Richard T., J.
This matter came on for trial without a jury on March 17 and 18, 2010. The plaintiffs, David S. and Jacqueline A. Norberg (hereinafter Norbergs or plaintiffs) appeal the January 25, 2006 decision of the defendant Uxbridge Planning Board (hereinafter Planning Board) denying the Norbergs’ request for an “Approval Not Required” (ANR) endorsement pursuant to G.L.c. 41, §8 IP. At issue was a plan setting forth a re-division of the plaintiffs’ land (Lot 2) situated on Landiy Lane, Uxbridge, Massachusetts. The Planning Board answers this appeal by stating that its decision to withhold an ANR endorsement was correct and proper because “Landiy Lane is not a way and, therefore, does not meet the criteria for endorsement of an ANR.” Further, the Planning Board affirmatively asserts that the property in question is subject to the Subdivision Control Law, G.L.c. 41, §§81C-81GG.
By motion allowed October 25, 2006, Stanley W. and Patricia L. Stefanick (hereinafter Stefanicks), asserting that their property rights might be significantly affected by a decision of this court, were permitted to intervene as defendants. The Stefanicks set forth in their answer that they, together with others within their family, are owners of property on both sides of Landiy Lane as it approaches the lot in issue, and are owners of the fee interest in the property claimed by the plaintiffs to constitute an extension or continuation of Landiy Lane. The Stefanicks oppose the plaintiffs’ attempt to reverse the decision of the Planning Board.
Five witnesses testified at trial: plaintiff Jacqueline A. Norberg, and Registered Land Surveyor John Andrews for the plaintiffs, and former resident of Landry Lane and former Chief of Uxbridge Police, John J. Emerick, Heniy Stefanick and Title Examiner Kristen Casucci for the defendants. Twenty-nine exhibits were admitted into evidence. Both parties submitted post-trial memoranda and requests for findings and rulings which have been considered by the Court. Upon the evidence that I find to be credible, I find and rule as follows.
FINDINGS OF FACT
Upon the testimony and documentary evidence I find credible, I make the following general findings of fact, reserving more detailed findings for the discussion of the issues.
1. The Norbergs reside at 46 Landry Lane, Uxbridge, Massachusetts and are owners of other property adjacent to their lot.
2. The Stefanicks own property at or about Landry Lane and reside at One Landry Lane.
3. Together with other members of their family, the Stefanicks own property on both sides of Landry Lane as it approaches the lot in issue, Lot 2.
4. Landiy Lane existed in some form as a way leading westerly from what is now Richardson Street since at least 1798. At the Uxbridge Town Meeting of May 8, 1798 the town voted “to accept the Road.” “Said Road was laid out by the Selectmen” and compensation was approved for payment to the owner of the property upon which the way was situated. This road, as laid out by the selectmen, extended in a westerly direction from Richardson Street for a length of 816.75 feet.
5. The lot in issue, Lot 2, is located some distance (200+ feet) beyond the 816.75-foot mark as laid out in 1798.
6. Landiy Lane, as it exists today on the ground, and as it existed on January 26, 2006, does not align accurately in all respects with its location as is set forth in the description of the way as accepted and laid out at the Uxbridge town meeting of May 8, 1798. Most notable is the location of the beginning of Landry Lane, as it intersects with Richardson Street. The description in the town meeting minutes place the northerly intersecting boundary of the Lane as being 1/2 rod (approximately 8 feet) from the southeast corner of the then Joseph Taft house. The present lane is located on the ground north of the northeast corner of the location believed to be that of the former Taft house.
7. The town of Uxbridge Planning Board notified the Land Court of the town’s adoption of the Subdivision Control Law, now found in G.L.c. 41, §§81K-81GG, and related rules and regulations, on January 29, 1959.
8. The plaintiffs’ home, located at 46 Landry Lane, is situated beyond the 816.75-foot length of the lane *437 as accepted and laid out in 1798. Jacqueline A. Norberg’s father and predecessor in title, Robert Barry, obtained a non-exclusive easement from Stanley W. Stefanick “for usual street purposes over that portion of the grantor’s land known as Landiy Lane ...,” when he built the home in 1969.
9. Exhibits in evidence show Landiy Lane as a way running westerly for an indeterminate distance on an 1837 Map of Worcester County, an 1895 USGS Topographical Map, a 1933 Precinct Map, an October 1937 Massachusetts State Planning Board map of “Roads and Waterways Town of Uxbridge” and a 1953 USGS Topography Map.
10. At an Uxbridge town meeting, May 17, 1977, Article 28 was passed accepting the public streets and the names of private ways of Uxbridge. Landry Lane was listed as a “Private Way.”
11. On July 18, 1988, the Uxbridge Planning Board endorsed a plan submitted by Robert E. and Patricia Barry, and certified by John R. Andrews, as “Approval Under Subdivision Control Law Not Required.” This property of Barry, situated on both sides of Landiy Lane as extended beyond the 816.75-foot mark (Extension or Landiy Lane Extension), was shown on the plan as being divided into three lots, two on the northerly side of Landry Lane and one (Lot 2) situated on the southerly side. Landiy Lane Extension is depicted on this plan as having a 120’ diameter “emergency turnaround” on Landiy Lane at the southwest comer of the most westerly lot, Lot 3.
12. The Stefanicks[1] sought judicial review of the Planning Board’s ANR endorsement of this plan. This action was, however, dismissed as being untimely filed. Stefanick v. Planning Bd. of Uxbridge, 39 Mass.App.Ct. 418 (1998).
13. Thereafter the plaintiffs submitted to the Planning Board a new plan of the three lots created on the Extension. This filing sought an ANR endorsement of a new configuration of Lot 2. The new proposed Lot 2 utilized the same frontage on Landry Lane as it had on the plan endorsed ANR in 1988. The redesigned Lot 2 contained approximately 1/2 acre more area but was seemingly configured so as to avoid wetland areas. This plan was again drawn and certified by John Andrews. The Planning Board, on January 26, 2006, in effect reversed its 1988 decision and denied granting an ANR endorsement “based on Town Counsel’s opinion that Landiy Lane is not a way and therefore, does not meet the criteria for endorsement of an ANR.” Having denied the endorsement on these grounds, the Planning Board never set forth whether the Extension was adequate for vehicular traffic.
14. From the Planning Board decision, the Norbergs timely filed the instant complaint pursuant to G.L.c. 41, §8IBB seeking an order from this court annulling and vacating the Board’s decision. The plaintiffs assert that they are entitled to an ANR endorsement as
“Landiy Lane was in existence prior to the date that the Subdivision Control Law became effective in the Town of Uxbridge, and because the locus has the requisite frontage on Landiy Lane,[2] the plan does not show a subdivision pursuant to G.L.c. 41, §81L... As such the decision to deny the ANR endorsement exceeded the Board’s authority.”
DISCUSSION
The Planning Board is required, under G.L.c. 41, §8 IP, to endorse a plan as “Approval Not Required” on an application by a landowner if the plan does not reveal a subdivision within the meaning of the Subdivision Control Law. Under G.L.c. 41, §81L, it is provided in pertinent part:
The division of a tract of land into two or more lots shall not be deemed to constitute a subdivision within the meaning of the Subdivision Control Law if, at the time when it is made, eveiy lot within the tract so divided has frontage on ... (c) a way in existence when the Subdivision Control Law became effective in the city or town in which the land lies, having, in the opinion of the planning board, sufficient width, suitable grades and adequate construction to provide for the needs of vehicular traffic in relation to the proposed use of the land abutting thereon or served thereby, and for the installation of municipal services to serve such land in the buildings erected or to be erected thereon.
The plaintiffs contend that Landiy Lane was a “way in existence” in 1959 when the Subdivision Control Law became effective in Uxbridge and therefore the re-division of Lot 2 is not a subdivision as defined by law and should have been granted an ANR endorsement.
It is clear from the case law that has emanated from the decisions interpreting the exemption from the subdivision approval process found in G.L.c. 41, §81L(c), that a “way in existence” for purposes of clause (c) may not be merely a plan proposal or “paper street” but must in fact be a “physical way on the ground.” Rettig v. Planning Bd. of Rowley, 332 Mass. 476, 481 (1955); Perry v. Planning Bd. of Nantucket, 15 Mass.App.Ct. 144, 151 (1983); Richard v. Planning Bd. of Acushnet, 10 Mass.App.Ct. 216, 219 (1980).
In addition to establishing that a way be in existence on the ground prior to the adoption of the Subdivision Control Law by a municipality, petitioners of a plan seeking an ANR endorsement must also establish that the ways within the plan have “sufficient width, suitable grades and adequate construction to provide for the needs of vehicular traffic in relation to the proposed use of the land abutting thereon.” G.L.c. 41, §81L.
Plaintiffs have the burden of proof that their plan is entitled to an ANR endorsement. In such an action brought under G.L.c. 41, §81BB, the trial judge hears the matter de novo, makes independent findings of fact *438 and, on the facts so found, determines whether the plan submitted to the planning board conforms to the dictates of the law. Rettig, 332 Mass, at 479.
1. Status of Initial 816.75 Feet of Landiy Lane
It is not only the status of the way at the point at which Lot 2 fronts that is in issue in this matter. The status of the way accepted in the 1798 layout is also in issue. In this regard, the defendants argue that the 816.75 feet of way accepted at the town meeting is not the way as exists on the ground today, or in January 2006 when the Planning Board rejected the Norberg’s submission as an ANR plan. The defendants also argue that the town meeting action of 1798 did not establish Landiy Lane a public way. Although, con-cededly, Lot 2 is located some distance beyond the 816.75-foot length of the way laid out in 1798, the status of this initial portion of the way is not merely an academic question. If the initial 816.75 feet comprises a town or public way, then if the further Extension of Landry Lane up to and past Lot 2 is deemed not to have been a “way in existence” under G.L.c. 41, §81L, further development of Lots 1, 2 and 3 would likely require subdivision approval at and beyond the point of 816.75 feet from Richardson Street. If the first 816.75 feet is not a public or town way, then any further division of Lots 1, 2 and 3 would require also subdivision approval of the access road, Landiy Lane, for its entire length from Richardson Street.
It is quite apparent that Landiy Lane has existed on the ground in some fashion since its layout and acceptance in 1798. Landiy Lane has been shown in the same location, on various maps and diagrams through the years. Exhibits showing Landry Lane dated 1837, 1895, 1933, 1937 and 1953 were admitted into evidence. See Finding of Fact No. 9.
Landiy Lane, as a way, could become a public way in any of three ways: “(1) laying out by a public authoriiy in the manner presented by statute . . .; (2) prescription; and (3) prior to 1846, a dedication by the owner to public use . . . coupled with . . . acceptance by the public.” Moncy v. Planning Bd. of Scituate, 50 Mass.App.Ct. 715, 716 (2001); Rivers v. Warwick, 37 Mass.App.Ct. 593, 594-95 (1994); Fenn v. Middleborough, 7 Mass.App.Ct. 80, 83-84 (1979).
The defendants first argue that Landiy Lane, even as laid out in 1798, was never laid out or accepted as a public road, but instead was accepted as a private way. The inhabitants of the town of Uxbridge, in 1798, however, “[vjoted to accept the Road,” and “laid out” this way as a “Town Road.” Labeling Landiy Lane as a “Town Road” is inconsistent with the town meeting inhabitants intending that Landiy Lane be a private way. Additionally the town voted to make payment of compensation to the property owner of the way. The payment or lack of payment of compensation to a property owner has been an important consideration in determining whether in fact a way was laid out as being private or public. In Money, 50 Mass.App.Ct. at 716-17, the Appeals Court found a lack of payment of compensation as being an important factor in concluding that the way in issue was not laid out as a public way. The Money court looked to the decision of United States v. 125.07 Acres of Land, More or Less, 707 F.2d 11 (1st Cir. 1983), in which Justice Breyer reasoned that a determination of whether a way was private or public could best be determined by who paid for it. Id. at 14. Additionally, testimony was presented at trial that the snow plowing and maintenance responsibilities for Landiy Lane to the extent that it was laid out in 1798 was, according to Jacqueline Norberg, a cooperative effort between her father (Robert Barry) and the town for as long as she could remember.[3] Although the performance of maintenance by the town on Landry Lane, by itself, does not confirm that the way was public, Bruggeman v. McMullen, 26 Mass. App.Ct. 963, 964 (1988), it is, along with the original acceptance at the town meeting and the payment of compensation by the town to the then owners of Landiy Lane, strong evidence that the Lane was not accepted as a private way. I find that Landiy Lane was accepted and laid out by the town of Uxbridge in 1798 as a “Town Road,” meaning a public way, and that it has existed as such since that date. The fact that the town listed Landiy Lane as a private way in 1977 on a listing of the ways within the town of Uxbridge is not conclusive. Boxborough v. Jonathan Spring Realty Trust, 356 Mass. 487, 490 (1969) (away is not necessarily public merely because it is listed as a public way in Town’s annual estimates seeking compensation from the Commonwealth of financial assistance); Cushing v. Nelson, No. 289885 (Land Court 2005) (act of naming streets within a town accords them no particular status). There being no evidence submitted that Landry Way was ever discontinued as a town road, it continues as a public way. Johnson v. Wyman, 75 Mass. 186, 188-90 (1857) (discontinuance of an existing road will not be presumed upon evidence that a new road was created by public authority absent evidence that the public authority intended to discontinue the prior road).
The fact that plaintiffs’ predecessor in title, Robert Barry, father of the plaintiff Jacqueline Norberg, obtained an easement over Landiy Lane when he built his house in 1969, does not change the nature or status of Landiy Lane.
It is true, as the plaintiffs concede, Landiy Lane is today not in the identical physical location as that set forth when accepted and laid out in 1798. John Andrews, the only Registered Land Surveyor to testify at trial, explained, however, that divergences between the location of ways on the ground and their location as set forth in ancient documents is not uncommon. Changes in magnetic north, as well as changes in the rotation of the earth over time requires some of the bearings in ancient surveys and maps to be rotated as much as 10 to 15 degrees. When he “rotated” the bearings at Landiy Lane as laid out in 1798, the *439 description of the lane as accepted does line up with the location of Landiy Lane as it exists on the ground.
Testifying for the defendants was Kristen Casucci, a title examiner. She testified that she recognized the need sometimes to rotate the lines of old layouts to have them coincide with actual present physical locations. She testified that, “I rotate descriptions veiy often. I am familiar with rotating descriptions.” She testified further, however, that when said rotation is made of the description as set forth in the 1798 acceptance, it does not line up well with the lane’s present physical location. She elaborated that both ends of the accepted lane, after rotation, do not coincide with their present physical locations. In order to match, the angle of the bend of the way as laid out in 1798 would have to be changed.
On cross examination Ms. Casucci agreed that ways are not always located where an old layout depicts them. On most old descriptions she generally allows for a deviation of a rod (16.5 feet) “give or take.”
I find that the way as accepted as a town road in 1798 exists on the ground today in its present location. No evidence was presented of a second way emerging in that location post-1798. The way as it presently exists is bordered at its origin off of Richardson Street with parallel old stone walls. No evidence exists that these walls have ever been moved to a new location.
Moreover I credit John Andrews’ testimony that rotation is necessary to conform the accepted description with the lane’s present location. I resolve the disagreement between the opinions of John Andrews and Kristen Casucci in large part upon John Andrews’ status as a registered land surveyor. As such I afford his opinion greater weight than the opinion of Kristen Casucci. Moreover Kristen Casucci admittedly embraces the theoiy of rotation when dealing with ancient descriptions and allows for discrepancies of some amount up to and including one rod (16.5 feet). Accordingly I find that the 816.75-foot length of Landry Lane as accepted in 1798 existed as a public way (town road) in 1959 at the time of the acceptance by the town of Uxbridge of the Subdivision Control Law and on January 25, 2006, at the time of the Planning Board’s denial of the plaintiffs’ plan seeking an ANR endorsement.
2. Status of the Extension of Landiy Lane
That portion of Landry Lane beyond the 816.75-foot mark from Richardson Street, the Extension, clearly was not laid out or accepted by the actions of the town meeting in 1798. The plaintiffs argue, however, that their plan submitted establishing the reconfiguration of Lot 2 should have been granted an ANR endorsement by the Planning Board since Lot 2 fronted on the Extension of Landiy Lane, which was a way in existence at the time of Uxbridge’s adoption of the Subdivision Control Law. G.L.c. 41, §81L(c).
The issue of the Extension’s existence in 1959 was greatly contested at trial. Despite the fact that the important date for consideration of this issue was fifty-one years ago, both sides offered testimony of witnesses who professed to remember the area during that period.
John Andrews testified for the plaintiffs that the Extension historically continued in a westerly direction well past the three lots which were endorsed ANR in 1988, until it was intersected by Route 146 in 1950-1951. Having lived in Uxbridge since 1938 and having been a land surveyor for the last forty years, he was well acquainted with Landiy Lane and the Extension. He performed a survey with his father of Robert Barry’s land in 1969 and knew the Extension that passed through it to be passable by motor vehicle, westerly beyond the point of the three lots created in 1988. A though there was not any volume of traffic, since the Extension did not lead anywhere, he did see electric company vehicles operating on the Extension to reach and return from an electric company substation situated on properly along the Extension. John Andrews was certain that the Extension would have been passable by motor vehicle in 1958 or 1959 from his observations in 1969 because “(i]t hadn’t been altered. It was obvious that it was the way it was.”
The plaintiff, Jacqueline Norberg, testified that she lived with her parents since 1969 at 46 Landiy Lane and built another house in 1988 and lived there at 57 Landiy Lane for a period before returning to live at 46 Landiy Lane. Thus she has lived at these two residences both of which are located on the Extension of Landiy Lane, for more than forty years. She testified that in 1988 when her father, Robert Barry’s 3-lot plan located on the Extension was approved for an ANR endorsement, her father, under agreement with the Planning Board, improved and paved the Extension and constructed an emergency turnaround at a point beyond the three lots. The school bus traveled onto the Extension to pick up her daughter from 2000 to 2008. Once the Extension was improved by her father and the turnaround constructed, the town took over its plowing and maintenance. Before that time both her father and the town shared those duties. Admittedly, Jacqueline Norberg could not comment on the status of Landiy Lane or the Extension during the years prior to 1969.
John Emerick, a former Uxbridge Police Chief, testified for the defendants. He was a thirteen-year- old resident in 1937 in a house located at the Extension just beyond the 816.75-foot accepted portion of Landiy Lane, but not quite as far beyond that point as the beginning of the 3-lot development created in 1988. His family’s house burned to the ground in 1938. He testified that Landiy Lane did not progress beyond that house. Despite the necessity of his going westerly from his house into the woods to collect firewood, he did not recall any roads, trails or cart paths existing beyond his house. He *440 testified that the Extension did run to their house and looped in front of the house but, “(t]hat was the end of the road” and it did not continue on. He admittedly moved from that area in 1938.
Henry Stefanick, brother of the deceased defendant/intervenor Stanley Stefanick, testified for the defendants. Henry Stefanick resides on Richardson Street. As a young boy in the late 1940s and thereafter, he spent much time at his two uncles’ sixty-eight-acre farm located at or about Landiy Lane. He recalls trucks of Mass. Electric utilizing Landry Lane to reach their substation prior to 1959. He testified that before Robert Barry improved and lengthened the Extension in 1969 nothing existed there but an overgrown “cart path.” Although he seems to have never traveled to the westerly limits of the Extension he, nonetheless, testified to it being overgrown with brush. The “cart path” he remembered was wide enough for a motor vehicle to travel, as the Mass. Electric vehicles did. He further testified that the Extension was completely changed in 1969 when Robert Barry “built himself a road” and made it passable through his three-lot development.
The recollections of the witnesses, being aged and contradicting, add little to the determination of whether the Extension existed as a way in 1959 when the Subdivision Control Law was adopted. The court thus looks to the record of more formal events for guidance. Certainly the Planning Board’s decision in granting the plan of plaintiffs’ predecessors ANR status in 1988 is such an event. The exact issue of the ways status in 1959 was before the Board on that occasion and seemingly was decided in the plaintiffs’ favor. Although, as the defendants now argue, the past act is not unassailable and if the Planning Board made an error of judgment in 1988 it is not only possible but preferable that they correct it at their next opportunity. Goldman v. Planning Bd. of Burlington, 347 Mass. 320, 324-25 (1964) (“If the Board thinks it has made a mistake it may not be forced to repeat and enhance the effect of the mistake when a different plan [showing the same way] is submitted”).
The Emericks lived in a house located on the Extension in 1937-1938. Although the question of a “way in existence” most likely was not scrutinized when that dwelling was constructed, the same cannot be said for the construction of the Barry (now Norberg) home at 46 Landiy Lane, built in 1969, and the residence built in 1988 at 57 Landiy Lane, now the home of Lisa and Scott Nester. The “way in existence” issue was pertinent at these junctures and would have been necessarily addressed before building permits were issued. Thus it again appears that determinations were made in the plaintiffs’ favor at that time.
The Planning Board’s 2006 decision is contradic-toiy of its 1988 decision and the issuing of building permits for 46 and 57 Landiy Lane. People have relied upon these prior decisions and have now changed their positions as a result.
I find, on the evidence produced that Landiy Lane was a way in existence in 1959 prior to the adoption of the Subdivision Control Law. I base this finding on the Planning Board’s 1988 ANR endorsement, and the approval of the building of homes upon the Extension in 1969 and 1988. The witnesses who testified all referred to some sort of way or path existing beyond the accepted 816.75 feet from Richardson Street. Although former Police Chief Emerick remembered nothing existing beyond his house in 1938, his house itself was located on the Extension which he admitted went to the extent of his family’s property and looped at that point. I find a way was in existence in 1959 at least to the furthest westerly boundary of Lot 3 of the ANR Plan dated June 29, 1988.
Finding solely that the way was in existence prior to the adoption of the Subdivision Control Law does not, however, conclude this matter in the plaintiffs’ favor. The provisions of G.L.c. 41, §81L require that for a plan to receive ANR endorsement every lot within the divided tract must front on “a way in existence when the Subdivision Control Law became effective” and that such way be found by the Planning Board to have “sufficient width, suitable grades and adequate construction to provide for the needs of vehicular traffic in relation to the proposed use . . ., and for the installation of municipal services to serve such land .. .” As the Planning Board’s 2006 decision was based solely on its determination that Landiy Lane “is not a way” it never took up the issues of the way’s suitability or adequacy. It is not the Court’s province to determine these issues which are more properly left to the informed judgment of the Planning Board. Accordingly this matter will be remanded for further hearings and/or decisions of the Planning Board of Uxbridge.
ORDER AND JUDGMENT
Upon the evidence submitted, I find and order judgment enter setting forth: (a) that Landiy Lane is a public way for the initial 816.75 feet of its length from its origin at its intersection with Richardson Street, town of Uxbridge; (b) that the extension of Landiy Lane in a westerly direction from the 816.75 foot point measured from Richardson Street, was a “way in existence,” as that term is used in G.L.c. 41, §81L, to the southwesterly corner of Lot 3 as approved ANR by the Planning Board in 1988; and (c) this matter is remanded to the Planning Board of the town of Uxbridge for further hearings and decisions consistent with this Order.

 Stanley Stefanick, Henry Stefanick, and the present plaintiff Stanley W. Stefanick, Jr.

 The frontage issue of Lot 2 has never been contested. I find that the frontage is sufficient in its length.

 Jacqueline Norberg moved to Landry Lane as a young girl in 1969. Thus she has no direct knowledge of these matters before 1969.