CLEO B. GOWER *vs.* TOWN OF SAUGUS.

Essex.   November 2, 1943. — March 27, 1944.

Present: FIELD, C.J., LUMMUS, QUA, & RONAN, JJ.

*Adverse Possession and Prescription.  Way,* Public: what constitutes, by prescription.  *Practice, Civil,* Ordering verdict, Judgment ordered in Supreme Judicial Court.

A motion by the defendant for a directed verdict, stated in general terms without differentiation among several counts in the declaration, was properly denied where there was evidence warranting a verdict for the plaintiff on one of the counts.

An admission that a way has become a public way by prescription cannot be found in the mere fact that the municipality, in order to avoid liability for the condition of the way under G. L. (Ter. Ed.) c. 84, § 24, has placed barriers and warning signs on it at its intersection with a public way.

Although it was proper for a trial judge to deny a motion for a directed verdict for the defendant because of its form, this court, having decided that error in the charge to the jury vitiated a verdict which had been returned for the plaintiff and required the sustaining of an excep-

tion by the defendant to the charge, further considered, upon a record which showed that there had been a full trial of the determinative issue in the trial court and full argument thereof in this court, the question whether the evidence was sufficient as a matter of law to warrant a finding for the plaintiff on that issue and, deciding that it was not sufficient, ordered judgment for the defendant under G. L. (Ter. Ed.), c. 231, § 124.

Certain evidence of a use of a narrow country lane in a town which was consistent with use of it as a private way by those having the right to do so; of the installation of water and lighting in some part of it; of the fact that it was not assessed to the abutters; and of barriers and warning signs placed by the town at a dilapidated bridge on the way and at the entrance of the way, did not warrant a finding that the way had become a public way by prescription.

TORT. Writ in the Superior Court dated October 16, 1940.

The action was tried before *Dowd,* J.

*S. Parsons,* (*A. L. Hogan* with him,) for the defendant.

*T. H. Mahony,* for the plaintiff.

QUA, J. At about 8 P.M. on September 26, 1940, the plaintiff, while walking across a bridge over "a small stream" on "Bridge Street" in the defendant town, stepped into a hole in the bridge and was injured. The plaintiff brought this action on three counts. The first count, under G. L. (Ter. Ed.) c. 84, § 15, alleged that "Bridge Street" was a public highway which the defendant was bound to keep in repair, and that the plaintiff had been injured by reason of a defect therein "negligently suffered" by the defendant. The second count was based upon c. 84, § 25, which provides that a defendant who has made repairs within six years shall not deny the location of the way. The third count was based upon c. 84, § 24, which provides in substance that the proper town officer shall, if the public safety requires, cause ways dedicated to the public use which have not become public ways (§ 23) to be closed where they unite with public ways or caution the public against entering thereon, and that otherwise the town shall be liable for defects therein as in the case of public ways.

"Bridge Street" had been "opened" up as a private way in 1912 or thereabouts as part of a real estate development. It extended from Central Street, a main highway, to "Hol-

land Street," another way laid out as part of the same real estate development and never "formally" accepted by the town. It was agreed that "Bridge Street" had never been laid out as a public way. There was no evidence that the town had built the bridge or the way or had ever repaired the bridge or way. There was ample evidence that the bridge had been for a long time dilapidated and defective, and that the plaintiff was injured in consequence. The case turns upon whether the town was legally responsible for the condition of the bridge.

At the close of the evidence the plaintiff waived the second count. The jury found for the plaintiff on the first count and for the defendant on the third count. The defendant excepts.

There was no error in refusing the defendant's motion for a directed verdict in its favor, which was presented at the close of the evidence. The motion was in general terms and did not differentiate among the several counts. It could not be granted because upon conflicting evidence a finding could have been made under the third count of failure to close "Bridge Street," or sufficiently to caution the public where it entered Central Street, a public way. *Tourtellotte* v. *Saulnier*, 267 Mass. 361, 364. *Shumway* v. *Home Fire & Marine Ins. Co.* 301 Mass. 391, 396. But on this count the jury later found for the defendant.

There was error, however, in the charge which may have affected the verdict for the plaintiff on the first count. In order to prevail on this count the plaintiff had the burden of proving that "Bridge Street" had become a public way by prescription. There had been evidence that at various times the town had placed wooden horses, lanterns, and warning signs at the corner of "Bridge Street" and Central Street, and also that it had placed warning signs at the bridge itself, which was over two hundred feet from the corner, but that these barriers, lanterns, or signs would be broken or removed. In reference to this the judge charged the jury in these words: "Well, besides that there is evidence here that the town of Saugus went down there after that and posted signs at some time on that bridge that it

was dangerous. Generally speaking there is no liability whatever to treat a street on a private way as they are likely to be in cities. But when a city does that sort of thing, it is for you to consider that from all the evidence — and it is for you to consider — *whether that city took that over by prescription, when it put a barrier there at Central Street, warning it was dangerous* [italics ours]. Well, that is for you to determine.

"The plaintiff says there were no signs when she fell; no signs there at all. *But if there were signs there that would indicate that the city took upon itself some responsibility in reference to that* [italics ours]; if there were signs or barriers that would be directed to the second (third)? count, where there was a duty on a city for the safety of the public to put up signs there. . . . *It is a question for you whether or not they put up on that site a barrier at that intersection across the street the city exercised that right of control over that private property but never in any way acquired prescriptive rights there* [italics ours]. . . .

"Well, the city went down and put up signs on this private property. Well, why? There was no responsibility on a city to put signs on private property unless there was a danger to the public. And then there is a provision under the statute wherever a condition dangerous to the public in certain instances, where the city has not taken the land by prescription, if there is a dangerous condition in that street to put up these signs, in addition to barriers in order to avoid liability. But of course if you find the city had taken the street by prescription why then the town is liable, has a liability resting on it to keep that free from dangers so it would be safe for the public."

The charge was confused and may have left the jury with the impression that not only signs at the bridge itself but even the very barriers and signs at the entrance to "Bridge Street" put up in accordance with G. L. (Ter. Ed.) c. 84, § 24, in order to avoid liability for the condition of "Bridge Street" were evidence that "Bridge Street" had become a public way by prescription. At the close of the charge this was called to the attention of the judge by counsel for the

defendant, who also said he wished to except to "that part of the charge as to the posting of signs." After a short discussion the judge, still referring to signs at the entrance to "Bridge Street," said to the jury, "The posting of signs, gentlemen, is evidence of recognition of supervision on the part of a city — supervision and control. Put it that way so it will be proper." The defendant excepted to this statement. The last statement by the judge only emphasized the former error. It still left it to the jury to treat the evidence of warning signs at the entrance to "Bridge Street" as evidence of an admission that "Bridge Street" had become a public way. Because of this error, to which exception was duly saved, the verdict for the plaintiff on the first count cannot stand.

It remains to consider the proper disposition of the case. There has been a full and complete trial of the issue whether "Bridge Street" had become a public way by prescription. In order to succeed the plaintiff must prevail on this issue. The case ought not to be sent back for a second trial if, after a full opportunity, the plaintiff has failed as matter of law to establish this part of her case, even though the defendant's motion for a directed verdict was not separately directed to this issue. The question of law whether the evidence was sufficient to warrant a finding that "Bridge Street" had become a public way by prescription has been fully argued before us. If there was no evidence to warrant such a finding, the case should now be disposed of under the authority of G. L. (Ter. Ed.) c. 231, § 124. See *Loanes v. Gast*, 216 Mass. 197, 199; *Weston v. Fuller*, 297 Mass. 545, 548.

In our opinion there was no evidence which in law would warrant a finding that "Bridge Street" had become a public way by prescription. Most of the evidence as to use of the way is indefinite as to time, so that it is at least doubtful whether the full period of twenty years has been covered. But there is another difficulty. In order to acquire a public way by prescription it must appear, as in the case of a private way, that the use was adverse to the owner, that is, under an apparent claim of right. *Sprow v. Boston & Albany*

*Railroad,* 163 Mass. 330, 339. There was nothing to warrant a finding that the use of "Bridge Street," which began in permission, afterwards became adverse. Recent photographs used at the trial give "Bridge Street" the appearance of a rather narrow country lane, without sidewalks, with no fence or rail upon its graded edge, and with vegetation beginning to encroach upon its sides. In its entire length of over nine hundred feet there were only two houses. It did not connect public ways. It ran from Central Street, a public way, to another way which had been laid out as part of the development. There was evidence that it had been used by men delivering various kinds of goods, by men who came to read gas and water meters, and by electric light men who "fixed the poles" (where did not appear). Nine or ten years ago a police officer had used it "probably . . . once a month," but not more recently because "the newer cars are swung lower; and there are rocks and everything." The fire department had been over it half a dozen times a year, but not in recent years. A member of the board of assessors had used it making assessments. There was evidence that pleasure cars and moving vans had used the way; that priests had sometimes used it; and that "all the people living on the side streets used it." It is apparent that all this evidence is entirely consistent with the use of "Bridge Street" as a private way for the benefit of lot owners in the development, including, of course, persons and public officers having occasion to see them or to deal with them or with their property. Indeed, there was some direct evidence that this was the only use made of the way. This is the kind of use that would be made of any private way connecting private dwellings with a public road. It has no tendency to show that the persons who used the way did so under a claim of public right. Evidence of much more extensive use of ways having much more the appearance of public ways has been held insufficient evidence of the acquisition of a public way by prescription. *Durgin* v. *Lowell,* 3 Allen, 398. *Sprow* v. *Boston & Albany Railroad,* 163 Mass. 330. *Moffatt* v. *Kenny,* 174 Mass. 311. The plaintiff relies upon further evidence that "there is water upon Bridge St.," that records

of the Lynn Gas and Electric Company "show installation of a lamp on Bridge St. December 31, 1921 and paid for by the town of Saugus," and upon evidence that the town had placed warning signs a few feet from the bridge. Evidence that a defendant town has installed public services in a way has force as an admission that the way has become public. *Sullivan* v. *Worcester*, 232 Mass. 111, 115. But it does not appear that the town installed the water, or if it did, upon what terms or in what portion of the way. It does not appear where on the way the light was installed, or even that it was for street lighting purposes. We discover no evidence that there was either street lighting or water in that part of the way between Central Street and the farther side of the bridge in the direction in which the plaintiff was travelling. We do not think that the evidence as to water and light has any substantial force as an admission that the whole length of the nine hundred foot way, or that part of it where the plaintiff fell, had become public. Stronger evidence of this same kind did not make a case for the jury in *Teague* v. *Boston*, 278 Mass. 305. See *Healey* v. *Smith Carriage Co.* 265 Mass. 203, 205, 208. Nor do we think that anything of substance was added by evidence that the town had attempted to save life and limb by placing a warning sign near the bridge in addition to whatever it may have done at the intersection. Evidence that after the laying out of the development the way was not assessed to any abutter was of no force in view of the testimony of the same witness that when land was laid out in lots with private ways it was not the practice to assess the ways. A finding required to maintain an action must be based upon something more than a mere scintilla of evidence. *Hillyer* v. *Dickinson*, 154 Mass. 502. *Sprow* v. *Boston & Albany Railroad*, 163 Mass. 330, 341.

The case falls within the class of cases illustrated by *Bullukian* v. *Franklin*, 248 Mass. 151, *Harvey* v. *Sandwich*, 256 Mass. 379, and *Teague* v. *Boston*, 278 Mass. 305, and is distinguishable from *Bassett* v. *Harwich*, 180 Mass. 585, *Sullivan* v. *Worcester*, 232 Mass. 111, and *Scott* v. *Worcester*, 257 Mass. 520.

*Exceptions sustained.*
*Judgment for the defendant.*