HANIG vs. TOWN OF SUDBURY, MISC 18-000404

































 
 ROBERT L. HANIG and MILADA HANIG, Plaintiffs, v. TOWN OF SUDBURY, et al., Defendants, and AUDREY KERN and HENRY E. OPLAND, Defendants-Intervenors
 MISC 18-000404 
 JULY 9, 2021
MIDDLESEX, ss.
SMITH, J.
DECISION














 This case concerns the legal status of the unpaved portion of the roadway known as Lincoln Lane in Sudbury, Massachusetts. The Plaintiffs, Robert L. Hanig and Milada Hanig (the "Hanigs"), live on the unpaved portion of Lincoln Lane and assert that it is a public way, thereby obligating the Defendant, Town of Sudbury (the "Town"), to provide municipal services in the form of the maintenance and repair of the way. The Town denies that the unpaved portion of Lincoln Lane is public and has refused the Hanigs' requests to provide maintenance and repair of the way which the Town had customarily provided prior to 2017. [Note 1] 





 The matter comes before the court on a "case stated." As such, the court may draw inferences from the facts and documents that make up the agreed record in the same manner as if the matter had gone to trial. See Town of Ware v. Town of Hardwick, 67 Mass. App. Ct. 325 , 326 (2006). 





Findings of Fact 





 I find the following facts based on the agreed record, plus the Affidavits of Daniel S. Leinweber, Karen A. Paradise, Frank Gaeta, and Dimitri Cantor submitted by the Hanigs. 





 Lincoln Lane forms a semicircular loop that starts on its northerly end at the intersection with Lincoln Road and reconnects on its southerly end at its second intersection with Lincoln Road. It is approximately 3,700 feet in length with the first 2,200 feet being paved and the remaining 1,500 feet being unpaved. Both paved and unpaved sections of the way are approximately 16 feet wide and serve multiple residential properties, including property owned by the Hanigs at 17 Lincoln Lane and property owned by the Defendants-Intervenors, Audrey Kern and Henry E. Opland, at 40 Lincoln Lane. The Town owns land at 85 Lincoln Lane and holds a conservation restriction on land along the unpaved section of Lincoln Lane. 





 Lincoln Lane was created prior to 1949, although its origin is not discernible from the record. In 1949, a group of citizens petitioned the Town to have Lincoln Lane accepted as a public way. At the town meeting of 1951, an article to accept Lincoln Lane as a public way did not pass. Six years later, in 1957, the matter was reintroduced under articles 35 and 36 of that year's town meeting warrant which proposed the acceptance of the entirety of Lincoln Lane as a public way. Articles 35 and 36 reflect that the selectmen reported the layout of Lincoln Lane in two sections. Article 35 described the first section, which extended a distance of approximately 2,200 feet from Lincoln Road, as being depicted on a plan entitled "Layout of Lincoln Lane for Acceptance by the Town of Sudbury, scale 1"=50', December 9, 1950, E.W. Pettigrew, Surveyor, sheet 1 of 2" (the "1950 Pettigrew Plan"). This was the same layout plan that was considered and failed to pass at the 1951 town meeting. Article 36 described the second section, which extended another 1,500 feet, as being depicted on page 2 of the 1950 Pettigrew Plan. The 1957 town meeting voted to approve Articles 35 and 36 and authorized the selectmen to acquire rights "for street purposes" in both sections of Lincoln Lane, by eminent domain or otherwise, and to assess 90% of the costs of the acquisition and construction to the abutters who owned property on Lincoln Lane. The record does not establish the date of the 1957 town meeting. 





 Following the town meeting, the town engineer prepared a new layout plan for the first 2,200-foot section of Lincoln Lane entitled "Town of Sudbury Massachusetts Layout of Part of Lincoln Lane for Acceptance, Scale 1 in. = 40FT., September 4, 1957, George D. White, Town Engineer" (the "1957 White Plan"). The 1957 White Plan appears to depict the first 2,200-foot section in substantially the same configuration as the 1950 Pettigrew Plan, but it clearly lays out a way that is 40 feet in width. The 1957 White Plan was endorsed by the planning board on September 25, 1957 and recorded at the Middlesex South District Registry of Deeds ("the Registry") on September 26, 1957 as Plan No. 1418 of 1957. At the time of recording, the Registry placed a stamp on the plan with handwritten notations that identified the recording information for the plan plus the words "With Taking Doc. No. 93." However, there is no evidence that a document referred to as "Taking Doc. No. 93" was ever recorded at the Registry, that the selectmen voted to make a taking by eminent domain of the section of Lincoln Lane depicted on the 1957 White Plan, or that an order of taking by eminent domain was ever recorded. The Registry stamp also contains a handwritten reference to a document recorded in Book 9029, Page 464 which is a betterment lien in favor of the Town against the 8 parcels of land that abutted Lincoln Lane on the 1957 White Plan. The lien was recorded presumably to secure reimbursement of the Town's costs to acquire and construct Lincoln Lane by the owners of the 8 parcels. I infer from the recorded plan, the reference to the betterment lien recorded in Book 9029, Page 464, and the dissolution of the betterment lien recorded in Book 10217, Page 369 that, at some point between 1957 and 1963, the Town paved the first 2,200 feet of Lincoln Lane. However, it is unclear whether the owners of the 8 parcels shown on the 1957 White Plan paid any betterments to the Town. 





 Regarding the second 1,500-foot section of Lincoln Lane depicted on the 1950 Pettigrew Plan, there is no evidence that the selectmen took any steps to carry out the authorization contained in article 36 to accept that section as a public way. The second section of Lincoln Lane is now the unpaved section where the Hanigs and others live. 





 The evidence of use of Lincoln Lane by the public is varied. While the Town does not maintain records that would establish when or how it has maintained and repaired Lincoln Lane, it is apparent from the Town's responses to the Plaintiffs' Requests for Admissions of Fact that the Town treated the entire length of Lincoln Lane, both paved and unpaved sections, in substantially the same way between 1957 and 2017. In particular, the Town maintained and plowed Lincoln Lane, as needed, at no cost to the property owners along the entire way. Since at least 1985, the Town graded the unpaved section of Lincoln Lane at least twice per year and filled potholes as needed, also at no cost to abutters. In addition, the Town provided fire and police services and school bus service, as necessary, to all residents living on Lincoln Lane with no distinction between whether they lived on the paved section or the unpaved section. These admissions by the Town were confirmed by the Affidavits of Daniel S. Leinweber, Karen A. Paradise, Frank Gaeta, and Dimitri Cantor, and the photographs included in the Joint Statement of Facts submitted by the parties. In addition, on at least 2 occasions, the Town has directed the public to use the unpaved section of Lincoln Lane as a detour when certain road work has precluded passage along Lincoln Road. Finally, the Town owns land at 85 Lincoln Lane which it acquired in 2004 and holds a conservation restriction on land that abuts 17 Lincoln Lane. There is no evidence that explains how the Town uses these properties if at all. 





 The evidence also established that the unpaved section of Lincoln Lane has been used by the general public for parking by people who are kayaking on the nearby Sudbury River or who are walking to Sherman Bridge and surrounding areas for recreational purposes. However, there is no evidence of the frequency, intensity, or duration of the public's use of this area for parking or walking. 





 In May 2017, the Town's customary practice of providing maintenance and repair to the unpaved section of Lincoln Lane ceased. On May 1, 2017, Daniel Leinweber, who resides at 30 Lincoln Lane, sent an email to the Town's public works director requesting repairs to potholes that had developed on the unpaved section of the way. In previous years, Mr. Leinweber had made similar requests to the public works department when potholes developed. Prior to May 2017, the department's response to those requests had been to fill the potholes and regrade the surface of the unpaved section of the way. In May 2017, with the department under new leadership, the public works director responded to Mr. Leinweber and informed him that the public works department would not provide any services to the unpaved section of Lincoln Lane because it was a private way and was not eligible for the expenditure of public funds for its maintenance. The Town's notification that it would no longer provide services to the unpaved section of Lincoln Lane prompted this lawsuit. 





Discussion 





 As the party asserting that the unpaved section of Lincoln Lane is a public way, the Hanigs bear the burden of proof. Rivers v. Warwick, 37 Mass. App. Ct. 593 , 594 (1994). They contend that the unpaved portion of Lincoln Lane is a public way in one of three ways. First, they assert that the 1957 town meeting votes to accept Lincoln Lane as a public way were sufficient, by themselves, to make it public and that the remaining steps prescribed in G.L. c.82 were mere ministerial acts the completion of which were not necessary to make Lincoln Lane a public way. Alternatively, they contend that if the Town failed to properly carry out the process of accepting Lincoln Lane under G.L. c.82, it is now estopped from denying that Lincoln Lane is public because such a denial contradicts the express direction given by the passage of articles 35 and 36 of the 1957 town meeting and is inconsistent with the Town's subsequent treatment of the way for the next 60 years. Finally, the Hanigs contend that Lincoln Lane is a public way by prescription. This decision will address the Hanigs' contentions in that order. 





 As a starting point, it is settled Massachusetts law that a road may become public in one of three ways: (1) a laying out by a public authority in the manner prescribed by G.L. c.82, §§21- 24; (2) prescription; or (3) prior to 1846, a dedication of the way by its owner coupled with acceptance by the public. Fenn v. Middleborough, 7 Mass. App. Ct. 80 , 83-84 (1979). There are no other ways by which a road can be made public. See W.D. Cowls, Inc. v. Woicekoski, 7 Mass. App. Ct. 18 , 19 (1979). 





 1. The 1957 Town Meeting Vote 





 The Hanigs assert that the entire length of Lincoln Lane became a public way upon the votes approving articles 35 and 36 of the 1957 town meeting which "accepted" Lincoln Lane and authorized the selectmen to take the necessary steps under M.G.L. c.80 and 82 to effectuate the votes. [Note 2] Those steps included the acquisition of the way "by eminent domain or otherwise." The Hanigs argue that the selectmen's failure to follow through and acquire property rights in the road "by eminent domain or otherwise" was of no legal consequence in converting Lincoln Lane into a public way. Rather, the acquisition of rights in Lincoln Lane is but a ministerial act in the process of accepting Lincoln Lane as public under Chapter 82. The Hanigs' argument is not supported by the law. 





 In 1957, General Laws Chapter 82 set forth the process for a municipality to convert a private way into a public way. In pertinent part, Chapter 82, §24, entitled "Taking by eminent domain and damages," provided that the selectmen 





 "shall within thirty days after the termination of the town meeting at which the laying out . . . of such town way . . . is accepted by the town, adopt an order of taking of such land by eminent domain under chapter seventy-nine or institute proceedings for such taking under chapter eighty A. Any person sustaining damage in his property by the laying out, alteration or relocation of a town way or private way shall be entitled to recover the same under said chapter seventy-nine . . ." (emphasis supplied). [Note 3] 





 The Supreme Judicial Court has construed Chapter 82 to require strict compliance by a municipality in order to accept a public way. Loriol v. Keene, 343 Mass. 358 (1961); see also Markiewicus v. Methuen, 300 Mass. 560 , 563 (1938). Indeed, the Loriol court held that, even where the town meeting voted to accept the way, the recording of the approved roadway layout was insufficient to make the way public reasoning that the requirements of Chapter 82 are not mere procedural technicalities but, rather, are indispensable conditions to the lawful appropriation of private property for public use. Loriol, 343 Mass. at 361. These statutory requirements safeguard the individual rights of private parties against "inconsiderate or capricious actions by municipal authorities." Id. The vote of the town meeting to accept the way, plus recording the approved layout are not enough to make the way public. 





 In the case of Lincoln Lane, the facts are substantially the same as Loriol. The vote of the 1957 town meeting to accept Lincoln Lane as a public way was the first step in the process mandated by Section 24. The selectmen failed comply with the remaining statutory requirements including the important step of acquiring title to Lincoln Lane by eminent domain or otherwise. That failure is dispositive of the question of whether Lincoln Lane became a public way by virtue of the town meeting votes of 1957. It did not. [Note 4] 





 2. Public Way by Estoppel 





 The Hanigs next argue that the Town should be estopped from denying that Lincoln Lane is a public way even if it failed to comply strictly with the requirements of Chapter 82, §24. Otherwise, the Town will benefit at the Hanigs' expense (and at the expense of their neighbors) from the failures of the selectmen in 1957 to carry out the will of the townspeople as directed by the town meeting votes on Articles 35 and 36. The Hanigs have not pointed to a Massachusetts case where a public way has been created by estoppel. 





 As stated at the outset of this Decision, Massachusetts law recognizes only three ways by which a road can become public: (1) municipal action in compliance with Chapter 82, §§21-24, (2) prescription, or (3) dedication of land by the owner for ways created prior to 1846. Fenn v. Middleborough, 7 Mass.App.Ct. at 83-84; W.D. Cowls, Inc. v. Woicekoski, 7 Mass.App.Ct. at 19. Central to each method to make a road public is the acquisition by the town of property rights in the road in question. No Massachusetts court has recognized the acquisition or transfer of property rights by estoppel as a means of creating or accepting a public way. 





 Furthermore, courts have generally refused to apply the doctrine of estoppel against governmental entities in the exercise of their public duties particularly where the application of estoppel would frustrate a statute or policy intended to protect the public interest. Labarge v. Chief Admin. Justice of the Trial Court, 402 Mass. 462 , 468 (1988); Gamache v. Mayor of North Adams, 17 Mass. App. Ct. 291 , 294 (1983). In this case, the application of estoppel to make Lincoln Lane a public way would frustrate the intent of Chapter 82, §24 to require a uniform process by which a municipality can accept a way as public, appropriate private property for the public's use of the way, and compensate private parties whose properties are harmed by the public action. See Loriol v. Keene, 343 Mass. at 361. 





 The Town's refusal now to recognize Lincoln Lane as a public way after the 1957 town meeting votes and years of providing public services to the way may appear unfair to the Hanigs and their neighbors but estoppel is not a legal basis on which to declare Lincoln Lane a public way. 





 3. Public Way by Prescription 





 The Hanigs' final contention is that Lincoln Lane became a public way by prescription. The creation of a public way by prescription over an existing private way requires proof of actual use by the general public that is continuous and uninterrupted, open and notorious, and adverse to the use of the private way for a period of at least 20 years. Fenn v. Middleborough, 7 Mass.App.Ct. at 84. The failure to prove even one of these elements defeats the prescriptive claim. Boothroyd v. Bogartz, 68 Mass. App. Ct. 40 , 44 (2007). While the SJC has recognized that public travel over a private way may be so predominant for a period in excess of twenty years that a public way may come into existence, Siegmund v. Building Comm r of Boston, 259 Mass. 329 , 334 (1927), the instances where a court has declared a way to be public by prescription are rare. "[D]etermining whether a public way has been established by prescription over a private way is a matter of considerable general public interest and concern, and the case law erects a high bar to making such a showing." Stone v. Garcia, 15 LCR 640 , 647-648 (2007) (holding that extensive evidence of occasional public use of way for recreational purposes for far longer than 20 years was insufficient to establish a public way by prescription); see Boxborough v. Joatham Spring Realty Trust, 356 Mass. 487 , 490 (1969) (holding that town's occasional plowing of unpaved road, scraping of the road surface, spraying and cutting of brush along the way, and use by members of the public to haul wood or to access hunting areas were not continuous or adverse uses sufficient to establish public way by prescription); Gower v. Saugus, 315 Mass. 677 , 682 (1944) (holding that evidence of use of a private way connecting two houses to public way by delivery persons, utilities workers, police cars, fire trucks, tax assessors, pleasure vehicles, moving vans, priests and people residing on side streets, to be consistent with use of a private way for the benefit of lot owners in development and not under a claim of public right); Rivers v. Warwick, 37 Mass. App. Ct. 593 (1994) (holding that town's occasional plowing of unpaved roads, repair of portions of roads after major washouts, rough grading, and sporadic use of roads by the public for recreational purposes was not continuous public use sufficient to establish a public way by prescription). 





 Evidence of continuous public use for more than twenty years is not, in and of itself, sufficient to establish that the public use was adverse. Boxborough v. Joatham Spring Realty Trust, 356 Mass. at 490. Rather, there must be evidence that the general public used the way as a matter of public right as distinguished from a rightful use by those who have a permissive right to travel over the private way. Id.; see also Bullukian v. Franklin, 248 Mass. 151 , 155 (1924). 





 In the case of Lincoln Lane, there is evidence that the Town has treated the unpaved section the same as the paved section with respect to the provision of municipal services for more than 20 years. However, taken in its totality, the evidence submitted by the Hanigs falls short of establishing a public way by prescription for, at least, two reasons. 





 First, the public use of the unpaved section of Lincoln Lane has not been sufficiently continuous for the court to conclude that the Town acquired rights in the way. Drawing generous inferences from the record, public use of Lincoln Lane has been sporadic even if it has taken place for over 60 years. The evidence was that, since 1957 or so, the Town has regularly plowed the unpaved way of snow and, since 1985, graded the way twice per year and filled potholes as needed or when requested by homeowners who lived on the unpaved section. The frequency of the Town's provision of these services was not established because the Town does not have historical records of these activities, but I infer that these services were provided as needed or when requested by homeowners along the way. In addition, the Town has allowed its police and fire departments to respond to calls on Lincoln Lane and has provided school bus service to families there, but the frequency of such use was not established. Members of the public have parked on the unpaved section of Lincoln Lane in connection with engaging in recreational activities along the Sudbury River but evidence of the frequency of the parking or when it began was not presented. On two occasions, the Town directed the public to use Lincoln Lane as a detour. Based on this evidence, I conclude that use of Lincoln Lane by members of the public has been sporadic and not sufficiently continuous to satisfy the requirement that the use has been continuous and uninterrupted for purposes of prescription. See Boxborough v. Joatham Spring Realty Trust, 356 Mass. 487 (1969); Gower v. Saugus, 315 Mass. 677 (1944); Rivers v. Warwick, 37 Mass. App. Ct. 593 (1994). 





 Second, the Hanigs did not prove that the public's use of Lincoln Lane was adverse or under a claim of public right. The law requires proof that the public used the way as a matter of public right as distinguished from a rightful use by those who have a permissive right to travel over the private way. Boxborough, 356 Mass. at 490. In this context, "public use" does not include a person using the road either by right or by permission, express or implied. Like the holding in Gower, the Town's provision of municipal services on the unpaved section of Lincoln Lane was not adverse to the Hanigs and their neighbors. Indeed, there was evidence that owners of property on Lincoln Lane requested that the Town provide maintenance and repair services for their benefit which suggests a permissive use by the Town, not an adverse use. Similarly, the provision of police or fire department service or school bus service to the owners on Lincoln Lane is not use that is adverse or under a claim of public right for purposes of prescription. Rather, these are services provided for the benefit of the Lincoln Lane owners. Gower, 315 Mass. at 682. 





 Furthermore, and perhaps most importantly, there was little evidence that the general public uses Lincoln Lane as a regular means of travel. Other than the sporadic parking by persons recreating at the Sudbury River or the two occasions when Lincoln Lane has been used as a detour, the general public does not drive on Lincoln Lane on a regular basis. This is a self contained, semi-circular road that is used predominantly by the persons who live on Lincoln Lane or their invitees and not by the general public as a cut-through to another public way. In this regard, most vehicular traffic on Lincoln Lane is there by permission, express or implied, and not under a claim of public right. 





 The evidence presented on the element of adversity does not meet the threshold required by Boxborough v. Joatham Spring Realty Trust, 356 Mass. 487 (1969), Gower v. Saugus, 315 Mass. 677 , 682 (1944) or Rivers v. Warwick, 37 Mass. App. Ct. 593 (1994). Therefore, I conclude that the unpaved section of Lincoln Lane is not a public way by prescription. 





Conclusion 





 Based on the evidence presented on this case stated, I find that the unpaved section of Lincoln Lane is not a public way. The Hanigs' Amended Complaint is dismissed, and judgment shall enter consistent with this Decision. 





FOOTNOTES
[Note 1] The Town claims in its Trial Memorandum that the court lacks subject matter jurisdiction over this case although it has not filed a motion to dismiss under 12(b)(1). At this stage, based on the record submitted, the court is satisfied that it has jurisdiction to determine the rights of the parties in Lincoln Lane. 

[Note 2] Chapter 80 authorizes a municipality to assess a betterment upon each parcel of land that is benefited by a public improvement such as the creation of a public way. 

[Note 3] Chapter 82, §24 has since been amended to require the selectmen to acquire rights in a way within 120 days of the termination of the town meeting. 

[Note 4] The Town maintains that the paved section of Lincoln Lane is a de jure public way and, therefore, the Town is justified in continuing to provide public services to that section of Lincoln Lane while refusing the same for the unpaved section of Lincoln Lane. Massachusetts law does not recognize a way referred to as de jure public. The paved section of Lincoln Lane suffers from the same shortcomings as the unpaved section. The Town never acquired property rights in the paved section of Lincoln Lane and, as a result, no portion of Lincoln Lane is a public way based on the record before the Court. It is also apparent that the Town had a practice of accepting ways as public by town meeting vote but failing to follow through with the steps required to complete the process. According to the Town's responses to the Plaintiffs' Requests for Admissions, Morse Road, Hilltop Road, Austin Drive, New Bridge Road, Walkup Road, Rice Road, Haynes Road, Clark Road, Puffer Lane, Julian's Way, Greystone Lane, and Sawmill La ne all suffer from the same defect as Lincoln Lane. None are public ways. 


 
 Home/Search 
 Land Cases by Docket Number
 Land Cases by Date 
 Land Cases by Name
 


 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.